**Civil Case No. 1:17-CV- _____**

**JAIME FUENTES,**
in his individual capacity
and on behalf of others similarly situated,

### Plaintiffs,

**v.**

**COMPADRES, INC.,**
    d/b/a Tequila's Family Mexican Restaurant,
**TEQUILAS OF THORNTON LLC,**
    d/b/a Tequila's Family Mexican Restaurant,
**JOSE GARCIA,** an individual,

### Defendants.

---

## COMPLAINT

---

## INTRODUCTION

1. Plaintiff Jaime Fuentes ("Plaintiff") worked as a waiter and bartender for Defendants' related restaurants for approximately five months, about two months at one in Thornton and about three at another in Golden. For all tipped workers including Mr. Fuentes at these related restaurants, Defendants failed to pay the proper overtime rate for hours over 40 worked in the workweek, retained tips for management, failed to provide adequate notice related to the tip credit, over reported his tips on paystubs, and required work to be done after they had clocked out at the end of their shifts.

2. To challenge these and other wage violations, Plaintiff, on behalf of himself and others similarly situated working at the two Tequila's Family Mexican Restaurant locations at

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

which he worked, brings this action, by and through his attorneys, against various corporate entities doing business as Tequila's Family Mexican Restaurant, as well as their owner and principal, Jose Garcia, to recover unpaid or underpaid wages and other damages under the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (hereinafter "FLSA"), the Colorado Wage Claim Act, §8-4-101, *et seq.* and the Colorado Minimum Wage Act, C.R.S. §8-6-101, *et seq.*, as implemented by the Colorado Minimum Wage Order (the "Minimum Wage Order").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331, by virtue of federal questions, 29 U.S.C. § 201 *et seq.* of the FLSA.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims by authority of 28 U.S.C. § 1367.

5. Venue lies with this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 201 *et seq.* A significant portion of the events giving rise to the instant litigation occurred at the Defendants' restaurant located at 17535 S. Golden Rd., Golden CO 80401.

## PARTIES

**Tequila's Family Mexican Restaurant Defendants**

6. Tequila's Family Mexican Restaurant is a chain of restaurants located throughout Colorado.

7. The Tequila's Family Mexican Restaurant at which Plaintiff first worked is located at 12020 Pennsylvania St., Thornton CO (the "Thornton" location).

8. The Tequila's Family Mexican Restaurant at which Plaintiff next worked is located at 17535 S. Golden Rd., Golden CO 80401 (the "Golden" location).

**AndersonDodson, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

9. For his work at both restaurants, his paychecks said the same thing at the top: "Tequila's Family Mexican Restaurants, 17535 S Golden Road, Golden, CO 80401-2635."

10. There also are or have been Tequila's Family Mexican Restaurants, sometimes also known as El Tequeleno's, located throughout Colorado including Lakewood, Arvada, Longmont, Grand Junction, Glenwood Springs, and Aurora.

11. There are various corporate entities affiliated with the Tequila's Family Mexican Restaurant chain, including but not limited to: Tequila's II Inc. (Grand Junction); Tequila's III, Inc. (Glenwood Springs); D&J Tequilas LLC (Longmont); El Tequileno #1 (224 Berthoud Way, Golden, CO 80401); El Nopal, LLC (Lakewood); and Properties of Tequilas, LLC.

12. The business activities of all of these corporate entities are related and performed through unified operations or common control for a common business purpose and constitute an "enterprise" within the meaning of the FLSA, 29 U.S.C. § 203(r).

13. For example, they have common ownership and management, common policies, common branding and public offerings, and common timekeeping and pay procedures. Further, employees including Plaintiff and others whom he knew have worked at multiple locations.

14. Defendant **Compadres, Inc.** is a corporation doing business within Jefferson County, and whose principal place of business is listed with the Colorado Department of State as being located at 17535 S. Golden Rd., Golden CO 80401. Its registered agent is listed with the Colorado Department of State as Jose Garcia with an address of 12020 Pennsylvania Street, Thornton, CO 80241.

15. Defendant Compadres, Inc. operates a restaurant located at 17535 S. Golden Rd., Golden CO 80401 which does business as Tequila's Family Mexican Restaurant.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

16. Defendant Compadres, Inc. operates a restaurant located at 12020 Pennsylvania St., Thornton CO which does business as Tequila's Family Mexican Restaurant.

17. Defendant **Tequilas of Thornton LLC** (hereinafter "Tequilas of Thornton LLC") is a corporation doing business within the County of Adams, and whose principal place of business is listed with the Colorado Department of State as being located at 12020 Pennsylvania St., Thornton CO. Its registered agent is listed with the Colorado Department of State as Jose E Garcia with an address of 224 Berthoud Way, Golden, CO 80401.

18. At all relevant times, the named corporate Defendants were engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

19. At all relevant times, the named corporate Defendants' enterprise, as well as, upon information and belief, each of its restaurants individually, had annual gross revenues easily in excess of $500,000.

20. At both of the restaurants at which Mr. Fuentes worked, servers were assigned five tables per station or section. At Thornton there were approximately 60 tables. At Golden there were approximately 35 to 40 tables. Plaintiff estimates that the tables would "flip" (meaning that for the same physical table, one party would leave and another one would come in) approximately 10 times per shift, 4 times for lunch plus around 6 times for dinner. For a lunch party of 4, an average bill was approximately $50; or $12.50 per person. For a dinner party of 4, an average bill was approximately $100; or $25 per person. Most parties were between 2 and 4 people. On the end of day POS receipts, Plaintiff's tables' sales ranged from approximately $300 to $1,600. Thus, even using the smallest numbers for a single restaurant, the $500,000 threshold is exceeded: $300 in sales per day times 7

**AndersonDodson, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

servers (35 tables divided by 5) times 365 days in the year = $766,500.

21. Defendants purchase food, supplies, equipment and other items necessary to run the restaurants from out of state vendors and/or originating outside the state of Colorado, with which to serve customers, some of whom also come from out of state. Further, Defendant Tequila's Family Mexican Restaurant advertises on the internet. Defendant Tequila's Family Mexican Restaurant also accepts payments by credit cards and, upon information and belief, utilizes the phone and internet lines to accept and transmit payments.

22. At all times material to this action, Defendants have been subject to the FLSA and have been an "employer" of the Plaintiff and others similarly situated, as defined by § 203(b) of the FLSA.

**Defendant Jose Garcia**

23. Defendant Jose Garcia, an individual, resides at 224 E. Berthoud Way, Golden CO 80401, Jefferson County, upon information and belief.

24. Defendant Garcia is an or the owner of the Tequila's Family Mexican Restaurant enterprise.

25. Defendant Garcia has an ownership interest in and/or is a shareholder of Compadre's, Inc.

26. Defendant Garcia has an ownership interest in and/or is a member of Tequilas of Thornton LLC.

27. At all times material to this action, Defendant Garcia actively participated in the business of the restaurants and exercised substantial control over the functions of the company's employees including Plaintiff.

28. For example, he hired Mr. Fuentes, set his rate of pay, had the authority to fire him, received a complaint from Mr. Fuentes regarding there being more tips reported on his paystub than he was actually receiving, and oversaw the "day to day" restaurant managers.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

29. At all times material to this action, Defendant Garcia was an "employer" of the Plaintiff and others similarly situated, as defined by § 203(b) of the FLSA.

## Plaintiff Jaime Fuentes

30. Plaintiff Jaime Fuentes is a resident of Denver, Colorado.

31. Plaintiff Fuentes worked for Tequila's Family Mexican Restaurant as a waiter/bartender from October 24, 2016 to February 22, 2017. He worked at Thornton for the first couple of months and then for about three months at Golden.

32. Regardless of the location, Plaintiff's paycheck said the same thing at the top: "Tequila's Family Mexican Restaurants, 17535 S Golden Road Golden, CO 80401-2635."

33. Both locations used the same kind of point-of-sale ("POS") system for clocking in and out and placing customers' orders. The menus at the two restaurants were the same. The logo and signs at the two restaurants looked the same. Further, regardless of the location, he had to wear the same uniform, a long sleeved grey shirt with the Tequila's logo on it.

34. Plaintiff's manager in Golden, Alejandro, worked at Thornton as a server with Plaintiff. Plaintiff also knows other people who worked at Thornton and who started working at Golden when it opened. Additionally, he knows other servers who worked at another Tequila's Family Mexican Restaurant location.

35. In regards to Plaintiff's duties and responsibilities, in addition to waiting tables, he would perform "side work" tasks such as putting ice in the coke machine, making iced tea, cutting lemons, making sure the salt and pepper racks were stocked, making sure the tables were clean, making sure the floors were clean, writing down the lunch specials for the customers to see, and rolling silverware.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

36. In this position, Fuentes regularly interacted with customers who were from all across the United States. He handled food and other supplies that originated outside of Colorado, and he utilized Defendants' credit card machine to process payments.

37. At all times material to this action, Plaintiff Fuentes was an "employee" within the meaning of 29 U.S.C. § 203(e) and 7 C.C.R. 1103-1(2).

38. When he worked in Thornton, on average Plaintiff estimates he worked 45 hours a week. In Golden, Plaintiff estimates that he worked 55 hours a week for the first three weeks after the location first opened, and then about 45 hours a week.

39. Plaintiff Fuentes usually worked 6 days per week, every day of the week except Tuesday, almost always working both lunch and dinner shifts. Generally, he started work around 10:00 a.m. before the restaurants opened for customers at 10:45 a.m. (Golden) and 11:00 a.m. (Thornton).

40. Plaintiff would clock out in the middle of the afternoon, for around 2-3 hours between around 2:00pm and 5:00pm.

41. The restaurants both close at 11:00 p.m. on Fridays and Saturdays and at 10:00 p.m. on the other days of the week. Plaintiff would generally clock out right around closing time unless there were any guests remaining in his section. In such circumstances, he would clock out shortly after the last one left, which was approximately 20-30 minutes after the closing time.

42. Plaintiff worked "off the clock" insofar as Defendants required him to perform work before clocking in and/or after clocking out. Specifically, Defendants regularly required Plaintiff to clock out and then perform "side work" and cleaning activities. This would take about 20-30 minutes per day.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

43. Defendants did not pay Plaintiff for this time in wages, nor did he receive any tips related to this time.

44. For almost every shift he worked at Golden, his manager Alejandro required him to clock out and then perform cleaning activities. When he worked at Thornton, this would happen less frequently, about 2-3 times per week.

45. While in this position, Plaintiff Fuentes's pay scheme was subminimum wage plus tips.

46. In 2016 (and the first pay period of 2017), his regular hourly rate was $5.28 per hour and his overtime rate was $7.92 per hour. Thereafter in 2017, his hourly wage rate was $6.28 per hour and the overtime rate was $9.14 per hour.

47. Thus, Plaintiff Fuentes was not paid at the correct rate for all hours over 40 worked in a workweek.

48. Fuentes, like others similarly situated, was never informed about or provided with notice of any tip credit claimed by the Defendants.

49. Even though customers would regularly leave tips on credit cards, tips were only ever paid to servers, including Plaintiff, in cash at the end of the shift, not in paychecks. On the pay stubs, all the tips were reported as cash tips.

50. Upon information and belief, management retained tips intended for Plaintiff and others similarly situated.

51. At some point when he was working at Golden, Plaintiff realized that the amount of tips reported on his paystubs was more than he actually received. In around mid-February, 2017, he complained to the restaurant owner about the over-reporting of his tips. About a week after he had confronted the owner about the over-reporting of his tips, the manager, Alejandro, accused him of stealing tequila and fired him.

**AndersonDodson, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

**FLSA Collective Plaintiffs**

52. Plaintiff brings the First Claim for Relief as a Collective Action pursuant to 29 U.S.C. § 216(b), on behalf of all tipped and/or subminimum wage employees working at Thornton and Golden employed by Defendants on or after the date three years before the filing of the instant Complaint (the "FLSA Collective Plaintiffs").

53. The FLSA Collective Plaintiffs are similarly situated, in that they have had substantially similar job duties and have been subject to common pay practices and decisions on the part of the Defendants. The FLSA claims of the Named Plaintiff alleged herein are essentially the same as those of the other FLSA Collective Plaintiffs.

54. The identities of the individuals comprising the FLSA Collective are, or should be, readily ascertainable from Defendants' records.

**Rule 23 Class**

55. The Named Plaintiff brings the Second Claim for Relief as a Class Action pursuant to Fed. R. Civ. Proc. 23, on behalf of all tipped and/or subminimum wage employees working at Thornton or Golden employed by Defendants on or after the date three years before the filing of the instant Complaint (the "Colorado Class Plaintiffs").

56. The number of, and identities of, the individuals comprising the Colorado Class are, or should be, readily ascertainable from Defendant's records. Notice can be provided to the Colorado Class Plaintiffs via means permissible under FRCP 23, correlative caselaw, and appropriate judicial guidance.

57. The precise number of persons is unknown, as such information is in the custody and control of the Defendants. However, upon information and belief, there are easily more than fifty (50) individuals in the proposed Colorado Class.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Fuentes v. Tequila's Family Mexican Restaurant*
USDC, District of Colorado

Complaint
Page 9

58. The proposed Class is so numerous that joinder of all members is impracticable. Further, the disposition of their claims as a class will benefit the parties and the Court.

59. The Named Plaintiff's claims are typical of those claims which could be alleged by any member of the class. Further, the relief sought by the Named Plaintiff is typical of the relief which could be sought by any member of the proposed Colorado Class. The Class members were all subject to the same practices, decisions, policies, plans, and customs of Defendants as alleged herein. There was nothing special about the Named Plaintiff that caused him to be treated differently than other Class members in regards to the pay methods to which he was subjected. Defendant benefitted from the unlawful withholding of wages due to members of the proposed Class and the Named Plaintiff in the same way. Though the exact amounts may differ, Plaintiff and other Class members incurred similar losses, injuries, and damages arising from Defendants' pay practices.

60. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Further, Plaintiff is represented by attorneys who are experienced and competent in class/collective action litigation, employment litigation, and wage and hour employment litigation in particular.

61. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. In wage and hour litigation involving low wage workers in particular, the individual Class members more often than not lack the financial, language, time, and other resources to vigorously prosecute a lawsuit against Defendants having a superior bargaining positions. A class action will allow those similarly situated to prosecute their common claims together and minimize the need for duplicative efforts expended on their behalf. Though important and significant to Class members individually, the damages

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

suffered by each of the individual Class members are relatively small relative to the costs associated with litigation; pooling them together therefore serves the end of efficiency.

62. In addition, important public interests will be served by treating this claim as a class action. Otherwise, there is a risk that some workers would be compensated according to the law and others not, resulting in a net benefit to Defendants for those who were improperly paid but for whom no damages are assessed.

63. Further, many current and even former employees may fear untoward repercussions for asserting claims on their own. They therefore sometimes tolerate illegal treatment as an alternative preferable to having no job at all when in fact Colorado law requires proper and legal wage payments regardless of what some individuals may acquiesce to when faced with desperation and vastly unequal bargaining power positions. Class actions allow these unnamed workers to rest in their anonymity while seeing their rights vindicated.

64. There are questions of law and fact common to the Class that predominate over questions affecting class members individually. Some of these questions may include the following:

   a. Whether subminimum wage and/or tipped employees have been paid at an incorrect rate for their overtime work;

   b. Whether Defendants improperly laid claim to the "tip credit" and whether subminimum wage employees are entitled to receive the full minimum wage rate;

   c. Whether Defendants unlawfully retained tips intended for the Plaintiff and others similarly situated;

   d. What Defendants' pay policies, practices, directives, instruction, programs, and procedures were for all relevant times;

   e. Whether Defendants' conduct was willful;

**ANDERSON DODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

f.  Whether Defendants maintained true and accurate time and payroll records; and

g.  What formulae are appropriate for calculating damages.

## LEGAL CLAIMS

### As And For A First Cause of Action:
### FAIR LABOR STANDARDS ACT (FLSA) VIOLATIONS

65. Plaintiff and other similarly situated employees reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth here.

### *Failure To Pay Time Overtime Properly*

66. Defendants failed to compensate Plaintiff and other similarly situated employees at the proper rate for all hours over 40 worked in a workweek, in violation of the FLSA.

67. Plaintiff and others similarly situated employees were improperly paid at a rate of time and a half the subminimum wage rate for hours over 40 worked in the workweek:

> "Where the employer takes the tip credit, overtime is calculated on the full minimum wage, not the lower direct (or cash) wage payment. The employer may not take a larger FLSA 3(m) tip credit for an overtime hour than for a straight time hour." - US DOL Fact Sheet #15

68. In 2016 the Colorado minimum wage rate was $8.31 per hour, $5.29 per hour for tipped employees (resulting in a "tip credit" of $3.02); in 2017, the rates are $9.30 and $6.28 respectively.  Thus, in 2016, for hours over 40 worked in the workweek, all subminimum wage employees, including Plaintiff, should have been paid at a rate of at least ($8.31 x 1.5) - $3.02 = $9.45 per hour.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Fuentes v. Tequila's Family Mexican Restaurant*
USDC, District of Colorado

Complaint
Page 12

This computation is summarized in the following chart for both years:

| MW | Sub-MW | Tip Credit | 1.5xMW | Tipped E'ee OT Rate |
|---|---|---|---|---|
| $8.31 | $5.29 | $3.02 | $12.47 | $9.45 |
| $9.30 | $6.28 | $3.02 | $13.95 | $10.93 |

69. In 2016, Plaintiff and others similarly situated were paid at a base rate of $5.28 per hour and an overtime rate of $7.92 per hour.

70. In 2017, Plaintiff and others similarly situated were paid at a base rate of $6.28 per regular hour and $9.14 per overtime.

### *Improper Retention of Tips by Management*

71. Defendants demanded or accepted some part of gratuities received by or on behalf of the Plaintiff and other similarly situated employees, thereby abnegating any entitlement to a tip credit.

72. Despite the fact that the restaurant accepts credit cards and many patrons left tips on credit cards, Defendants list all tips as "cash tips" on the employees' paystubs. The numbers listed there, however, greatly exceeded the amount in tips Plaintiff and others similarly situated actually received. The difference between those two numbers constitutes illegal retention of tips by management.

### *Improper Claim to Tip Credit Amount; Minimum Wage Violations*

73. Defendants had a policy and practice of rounding reported tips up in such a way as to claim the full amount of tip credit when it was not entitled to do so.

74. The restaurant failed to provide a tip notice.

75. In addition, Defendants' management over-reported the tips of Plaintiff and others similarly situated on their paystubs, and kept a portion of the collected tips for themselves.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Fuentes v. Tequila's Family Mexican Restaurant*
USDC, District of Colorado

Complaint
Page 13

76. For these reasons, Defendants improperly laid claim to the tip credit, and therefore should have paid all employees, including tipped employees, at a rate at or above the full minimum wage rate, and time and a half that rate for overtime work.  Further, the tips retained by the Defendants or their management must be remitted to the "customarily and regularly" tipped employees who were supposed to receive them.

### *"Off the Clock" Work*

77. Defendants required, suffered, and/or permitted Plaintiff and others similarly situated to perform work such as cleaning the restaurants and performing "side" work after clocking out at the end of their shifts.

78. For this time worked Plaintiff and others similarly situated were wholly unpaid.  Plaintiff and others similarly situated are entitled to receive at least the minimum wage for all these unpaid hours worked, and time and a half if that time was over 40 hours worked in the workweek.

### *Record-Keeping Failures*

79. By requiring Plaintiff and others similarly situated to work after they clocked out and over-reporting their tips, Defendants failed to make, keep, and preserve *accurate* records regarding the wages, hours, and other conditions of employment of Plaintiff and other similarly situated employees, in contravention of the FLSA and affiliated Regulations, 29 U.S.C. §§ 211(c), 215(a)(5) and 29 C.F.R. § 516.

### *Willful & Not Based On Good Faith & Entitlement to Damages*

80. Defendants had no good faith basis for believing that their pay practices as alleged above were in compliance with the law.

81. At all relevant times, Defendants knew of the FLSA's requirements regarding minimum

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

wage, overtime, and tip credits. In paying Plaintiff and others similarly situated in the manner in which they did, Defendants knowingly violated the mandates of the FLSA.

82. Further, when Plaintiff complained to Defendants about the over-reporting, Defendants fired him.

83. The foregoing conduct constitutes a "willful" violation of the FLSA, 29 U.S.C. § 255(a).

84. As a result of the violations by Defendant of the FLSA, the Plaintiff is entitled to all damages available under the FLSA which include, but are not limited to, all unpaid wages, overtime, liquidated damages, attorney fees, costs, and interest, as set forth in the FLSA, more specifically 29 U.S.C. § 216(b).

### As And For A Second Cause of Action:
### COLORADO WAGE ACT VIOLATIONS

85. Plaintiff realleges and incorporates by reference each allegation contained in the paragraphs above, and by reference repleads and incorporates them as though fully set forth here.

86. Defendants were "employers" of Plaintiff and others similarly situated as that term is defined by the Wage Order. 7 C.C.R. 1103-1(2).

   a. Plaintiff (and others similarly situated) is an "employee" and Defendants are "employers" under the FLSA.

   b. Defendants also employed the Plaintiff (and others similarly situated) in a business or enterprise that prepares and offers for sale, food or beverages for consumption either on or off the premises, and therefore in an industry regulated by the Wage Order. 7 C.C.R. §1103-1(2)(C).

87. Plaintiff and others similarly situated are Defendants' "employee" as that term is defined by the Wage Order because they perform labor for the benefit of Defendants in which

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Fuentes v. Tequila's Family Mexican Restaurant*
USDC, District of Colorado

Complaint
Page 15

Defendants commanded when, where, and how much labor or services would be performed. 7 C.C.R. 1103-1(2).

### Failure to Pay Minimum Wage
**(Violation of the C.R.S. § 8-6-101 *et seq*.; Colorado Min. Wage Order 31, 7 C.C.R. § 1103-1)**

88. Defendants failed to pay Plaintiff and others similarly situated at a rate at or above the applicable minimum wage rate for all hours worked in the workweek.

89. Defendants were not entitled to enjoy the benefits of the tip credit allowance as alleged above.

### Failure to Pay Weekly Overtime Premiums
**(Violation of the Colorado Wage Act, C.R.S. §§ 8-4-109; 7 C.C.R. 1103-1(4))**

90. Plaintiff and others similarly situated worked more than 40 hours at least some workweeks.

91. Defendants do not pay the Plaintiff and others similarly situated the correct amount of overtime premiums for hours worked over 40 in each workweek.

92. Plaintiff and others similarly situated are entitled to recover the unpaid balance of the full amount of the wages owed to them, and penalties. C.R.S. § 8-4-109; 7 C.C.R. 1103-1(18).

93. Defendants violated the CWA as implemented by the Wage Order, when they failed to pay the Plaintiff and others similarly situated overtime premiums for hours worked over 40 in each given workweek or 12 hours per day. 7 C.C.R. §1103-1(4).

94. For any and all time worked by all Plaintiff and others similarly situated, or to be credited to all Plaintiff and others similarly situated during a workweek, Plaintiff and others similarly situated are entitled to pay at their regular rate of pay for work up to 40 hours of work per workweek, and at time-and-a-half for all of work over 40 hours per workweek or

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

12 hours per day.

### *Improper Payment of Tips*
**(Violation of the C.R.S. § 8-4-103(6); Colorado Min. Wage Order 31, 7 C.C.R. § 1103-1(10))**

95. Defendants denied Plaintiff and others similarly situated the presents, tips, or gratuities intended for them.

### *Failure to Pay Wages When Due*
**(Violation of the C.R.S. § 8-6-103)**

96. Defendants failed to pay Plaintiff and others similarly situated all earned wages when due.

97. Specifically, as previously alleged, Defendants failed to pay Plaintiff and others similarly situated at a rate at or above the minimum wage, the correct rate for overtime, and all tips intended for them.

### *Failure to Pay All Earned Wages*
**(Violation of the C.R.S. § 8-6-109)**

98. Plaintiff has been separated from employment with Defendants.

99. Defendants failed to pay Plaintiff all his wages and compensation earned during Plaintiff's employment.

### *Willful Failure to Respond to Wage Demand*
**(Violation of the Colorado Wage Claim Act, C.R.S. §§ 8-4-109, -110)**

100. Plaintiff, on behalf of himself, the FLSA Collective Plaintiffs, and the Colorado Class Plaintiffs, sent Defendants a wage demand letter pursuant to C.R.S. § 8-4-109.

101. In that Colorado Wage Demand letter, Plaintiff demanded $11,260.05 in unpaid wages on behalf of himself, plus amounts to be computed according to the same formulas for others similarly situated.

102. Once 14 days have passed after Defendants received Plaintiff's wage demand

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

letter and no wages have been tendered, they are liable for additional penalties pursuant to § 109 in an amount equal to 125% of the first $7500 demanded plus 50% of the amount over $7500.

103. Further, to the extent Defendants' failure to pay is found to be willful, the penalty shall increase by an additional 50%.

### Record-Keeping Failures
### (Violation of the CMWA, C.R.S. §§ 8-6-101, *et seq.*, Wage Order 7 C.C.R. 1103-1(12))

104. Defendants failed to maintain a true and accurate record for each employee, including Plaintiff, of the following information:

    c. name, address, social security number, occupation and date of hire

    d. date of birth, if the employee is under eighteen (18) years of age

    e. daily record of all hours worked

    f. record of allowable credits and declared tips

    g. regular rates of pay, gross wages earned, withholdings made and net amounts paid each pay period.

### Damages

105. Plaintiff and others similarly situated are entitled to recover in this civil action the unpaid balance of the full amount of unpaid wages, underpaid minimum wages, and/or underpaid overtime wages that are owed and appropriate penalties, together with reasonable attorney fees and court costs. C.R.S. § 8-6-118; 7 C.C.R § 1103-1(18).

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Fuentes v. Tequila's Family Mexican Restaurant*
USDC, District of Colorado

Complaint
Page 18

## As And For A Third Cause of Action:
## RETALIATION IN VIOLATION OF THE FLSA

### (Plaintiff Fuentes Only)

106.     Plaintiff realleges and incorporates by reference each allegation contained in the paragraphs above, and by reference repleads and incorporates them as though fully set forth here.

107.     Plaintiff inquired or complained about the propriety of the over-reporting of tips appearing on his paystub to the Defendants by making a complaint directly to the restaurants' owner, Defendant Garcia.

108.     By complaining about the propriety of these pay practices to Defendants, Plaintiff engaged in activity protected under the FLSA.

109.     Shortly thereafter, he was terminated.

110.     Plaintiff's termination from employment was an adverse employment action.

111.     Plaintiff's termination from employment was causally connected to his inquiries regarding his pay.

112.     Defendants violated the provisions of Section 15(a)(3) of the FLSA (29 U.S.C. § 215(a)(3)), by discriminating against Plaintiff for exercising rights protected under the Act.

113.     As a result of these violations by Defendants of the FLSA, the Plaintiff is entitled to damages as set forth in the FLSA, more specifically 29 U.S.C. § 215(a)(3), in an amount to be determined at trial.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Fuentes v. Tequila's Family Mexican Restaurant*
USDC, District of Colorado

Complaint
Page 19

## As And For A Fourth Cause of Action:
## RETALIATION IN VIOLATION OF COLORADO LAW

### (Plaintiff Fuentes Only)

114.     Plaintiff realleges and incorporates by reference each allegation contained in

the paragraphs above, and by reference repleads and incorporates them as though

fully set forth here.

115.     Defendants violated the provisions of Colorado Wage Act § 8-4-120 by

retaliating against Plaintiff for exercising protected rights.

116.     As a result of these violations by Defendants of the Colorado Wage Act, the

Plaintiff is entitled to damages as set forth in the Colorado Wage Act, in an amount

to be determined at trial.

117.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(A)     Certify Count I as a Collective Action pursuant to 29 U.S.C. §216(b); and

(B)     Certify Count II as a Class Action pursuant to Fed. R. Civ. Proc. 23; and

(C)     Award Plaintiff and others similarly situated unpaid and underpaid wages due under

the FLSA and the Colorado Wage Laws; and

(D)     Award Plaintiff and others similarly situated liquidated damages in the amount of

their unpaid FLSA wages pursuant to 29 U.S.C. § 216(b); and

(E)     Award Plaintiff and others similarly situated statutory penalties as provided for by

Colorado law; and

(F)     Award Plaintiff and others similarly situated interest; and

(G)     Award Plaintiff a service award for his role as "Named Plaintiff"; and

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Fuentes v. Tequila's Family Mexican Restaurant*
USDC, District of Colorado

Complaint
Page 20

(H)     Award Plaintiff appropriate damages for the retaliatory acts taken against him, including back pay, front pay in lieu of reinstatement, emotional distress, other appropriate actual, general, or compensatory damages, and punitive damages, in an amount to be determined at trial;

(I)     Award the costs of this action together with reasonable attorneys' fees; and

(J)     Award such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands a trial by jury on all questions of fact raised by the complaint.


Respectfully submitted, this **12**th day of **May, 2017.**


ANDERSONDODSON, P.C.

s/ *Penn Dodson*

**Penn A. Dodson**
11 Broadway, Suite 615
New York, NY 10004
212.961.7639 tel
(646) 998-8051 fax
*penn@andersondodson.com*

Attorneys for Plaintiff

ANDERSONDODSON, P.C.

s/ *Alexander Gastman*

**Alexander L. Gastman**
11 Broadway, Suite 615
New York, NY 10004
212.961.7639 tel
(646) 998-8051 fax
*alex@andersondodson.com*

Attorneys for Plaintiff

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*