IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01180-CMA-MEH

JAIME FUENTES, individually and on behalf of others similarly situated,

      Plaintiffs,

v.

COMPADRES, INC., d/b/a Tequila's (Golden),
TEQUILAS THORNTON NUMBER 6, LLC, d/b/a Tequila's (Thornton),
TEQUILAS OF THORNTON, LLC d/b/a Tequila's (Thornton),
EL AGAVE AZUL, INC. d/b/a El Tequileno (Arvada),
EL NOPAL, INC. d/b/a El Tequileno (Lakewood),
EL TEQUILENO #1 d/b/a El Tequileno (Aurora),
JOSE RAIGOZA DeJESUS GARCIA, and
RODRIGO SANCHEZ,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Jaime Fuentes, on behalf of himself and others similarly situated ("Plaintiff"), initiated this action on May 12, 2017 and filed the operative Second Amended Complaint on September 15, 2017 alleging, *inter alia*, that the Tequila Defendants[1] and the Tequileno Defendants,[2] which are restaurants and alleged owners/managers of the restaurants, failed to pay the proper overtime rate for hours over 40 worked in the workweek, retained tips for management, failed to provide adequate notice related to the tip credit, and over-reported his tips on paystubs in violation

_____

[1]The "Tequila Defendants" are Compadres Inc., Tequilas Thornton Number 6, LLC, Tequilas of Thornton, LLC, and Jose Raigoza DeJesus Garcia.

[2]The "Tequileno Defendants" are El Agave Azul, Inc., El Nopal, Inc., El Tequileno #1, and Rodrigo Sanchez.

of the Fair Labor Standards Act ("FLSA") and the Colorado Wage Claim Act ("CWCA").

Here, Plaintiff primarily seeks an order requiring Defendants to provide Plaintiff a list of all non-management employees who may be similarly situated to the Plaintiff, approval of the Plaintiff's proposed Notice and Consent to Join forms, authorization to distribute the Notice and Consent to Join forms, and the appointment of Plaintiff's counsel as "counsel for the collective." He also moves for conditional certification as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") only as "the Court deems necessary" to support Plaintiff's primary requests. Finally, Plaintiff seeks an order granting his request to "equitably toll" the FLSA's statute of limitations for putative opt-in members of the collective.

Defendants counter that discovery is stayed in this case and Plaintiff's motion is an improper request for discovery and, otherwise, that Plaintiff asserts insufficient allegations to determine persons similarly situated and to warrant conditional certification in this case. Defendants also contend that Plaintiff has not met his burden to establish extraordinary circumstances or wrongdoing sufficient to warrant equitable tolling.

The Court finds that Plaintiff asserts substantial allegations demonstrating he and others similarly situated are the victims of certain policies, plans, or practices sufficient to grant conditional certification for Plaintiff's minimum wage and overtime claims; Plaintiff should be permitted to seek certain contact information from putative collective action members; Plaintiff's Notice and Consent to Join, with this Court's suggested modifications, is proper; and equitable tolling of the FLSA claims is proper to a certain extent. Accordingly, the Court recommends that the Honorable Christine M. Arguello grant in part and deny in part the Plaintiff's motions.

## BACKGROUND

Plaintiff alleges in the operative Second Amended Complaint that he worked for Tequila's Family Mexican Restaurant as a waiter/bartender from October 24, 2016 to February 22, 2017. In addition to waiting tables, Plaintiff was tasked with "side work" such as loading ice into the soda machine, making iced tea, slicing lemons, stocking the salt and pepper racks, cleaning the tables and floors, writing the daily lunch specials for customers, and rolling silverware. In his position, Plaintiff regularly interacted with customers who were from all across the United States. He handled food and other supplies that originated outside of Colorado, and he utilized Defendants' credit card machine to process payments.

Plaintiff estimates that he worked between 45-to-55 hours per week, six days per week, or every day of the week except Tuesday, and he almost always worked both the lunch and dinner shifts. He also worked "off the clock," meaning the Defendants required Plaintiff to perform work before clocking in and/or after clocking out. Specifically, Defendants regularly required Plaintiff to clock out, then perform the "side work" and cleaning activities, which took approximately twenty-to-thirty minutes per day to perform. Defendants did not pay Plaintiff for this time in wages, nor did he receive any tips related to this time.

In this position, Plaintiff's pay scheme was sub-minimum wage plus tips. In 2016 (and the first pay period of 2017), his regular hourly rate was $5.28 per hour and his overtime rate was $7.92 per hour. Thereafter in 2017, his hourly wage rate was $6.28 per hour and the overtime rate was $9.14 per hour. Thus, Plaintiff claims he was paid an incorrect rate for all hours over 40 worked in a workweek. In addition, Plaintiff, like others similarly situated, was never informed about or provided notice of any tip credit claimed by the Defendants. He asserts management retained tips

intended for Plaintiff and others similarly situated.   In around mid-February 2017, Plaintiff complained to Defendant Garcia about the over-reporting of his tips.   Approximately one week later, the manager ("Alejandro") accused Plaintiff of stealing tequila and fired him.

Based on these factual allegations, Plaintiff claims on behalf of himself and others similarly situated willful violations of the FLSA including minimum wage violations; failures to compute overtime properly for sub-minimum wage tipped workers; and incorrect payment of overtime and minimum wages due to incorrect accounting of hours worked.   Am. Compl., ECF No. 63.   Plaintiff also claims violations of the CWCA, including failures to pay minimum wages and weekly overtime premiums; improper payment of tips, failure to pay wages when due, failure to pay all earned wages, failure to properly keep records, and willful failure to respond to a wage demand.   *Id.*

Both the Tequila Defendants and the Tequileno Defendants responded to the operative pleading by filing motions to dismiss, which were referred to this Court for a Report and Recommendation.   The Court recommended that Judge Arguello grant the motions with respect to Plaintiff's CWCA claims against the individual Defendants but, otherwise, deny the motions to dismiss the remaining claims.   The parties filed objections to the recommendation on January 9, 2018 and it is now pending before Judge Arguello.

## ANALYSIS

### I.      Motion for Contact Information and Possible Conditional Certification

Plaintiff asks the Court to order Defendants to produce a list of names and contact information of all current and former employees who worked in non-management positions for Defendants at any time on or after May 12, 2014, and to approve a Notice and Consent to Join form for distribution to potential opt-in plaintiffs.   Mot. 1.   Plaintiff argues that at least one judge in this

4

district has found conditional certification unnecessary before issuing such order; however, to the

extent the Court determines conditional certification necessary here, Plaintiff asserts he has met the

applicable standard under the FLSA for conditional certification of a "collective action" and defines

the class as "all non-management employees who were/are employed by Defendants at any of the

five restaurants at issue at any time on or after May 12, 2014." Mot. 10, 12.

"Under the FLSA, . . . 'conditional certification' does not produce a class with an

independent legal status, or join additional parties to the action. The sole consequence of conditional

certification is the sending of court-approved written notice to employees." *Genesis Healthcare*

*Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (citing *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 164,

171–72 (1989)). Judge Arguello has explained the legal framework for conditionally certifying a

collective action under FLSA:

> Courts take a two-step approach to certifying FLSA collective actions. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–05 (10th Cir. 2001). At the first step, prior to the completion of discovery, the district court makes a "notice stage" determination of whether potential claimants are similarly situated. (*Id.*) For conditional certification at the notice stage, the Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (quotation omitted). "This initial step creates a lenient standard which typically results in conditional certification of a representative class." *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007). At this notice stage, "a court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations." *Id.* at 434.

> The second step for class certification under § 216(b) demands a higher level of scrutiny. At the second step, which occurs after discovery is complete and usually prompted by a motion to decertify, a district court examines, inter alia, any disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendant that appear to be individual to each plaintiff, and fairness and procedural considerations. *See Thiessen*, 267 F.3d at 1103.

*Beltran v. InterExchange, Inc.*, No. 14–cv–03074–CMA, 2017 WL 4418684, at *3–*4 (D. Colo.

Apr. 28, 2017). The first "notice" stage, for which the present motion is filed, is a matter of facilitating notice to potential opt-in plaintiffs and conducting specific discovery for that purpose. *See Hoffman–La Roche Inc.*, 493 U.S. at 170–71.

This Court has already found that Plaintiff's allegations against Defendants are sufficient to withstand a challenge pursuant to Fed. R. Civ. P. 12(b)(6), which requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* R. & R., ECF No. 14. The standard here requires that the allegations be "substantial" and demonstrate that the putative class members were together the victims of a single decision, policy, or plan. *See Beltran*, 2017 WL 4418684 at *4 (noting that the court had already ruled on the motions to dismiss and concluding that the pleadings satisfactorily alleged an agreement among the defendants to fix wages at an unlawful level).

Plaintiff contends he has "met the requirement of providing 'substantial allegations' in the Second Amended Complaint and attached Declarations" arguing that the putative collective members were/are subject to a "uniform decision, policy, or plan," which he defines as Defendants' "fail[ure] to pay the proper overtime rate for hours over 40 worked in the workweek, ret[ention of] tips for management, fail[ure] to provide adequate notice related to the tip credit, and over-report[ing of] tips on paystubs." Mot. 2, 12. Plaintiff supports his contention with the operative Second Amended Complaint and the attached declarations of the Plaintiff and two former employees who worked in the Thornton, Golden, Arvada, and Lakewood restaurants. Pl.'s Exs. B, C, D, ECF Nos. 94-2, 94-3, and 94-4.

6

Defendants[3] counter that the Court should, in fact, construe Plaintiff's motion as seeking conditional certification, rather than discovery, and find that the proposed class is "overly broad"; Plaintiff's allegations are conclusory and fail to meet the standard for "substantial allegations"; Plaintiff's declarations reveal that the employees worked at different restaurants at different times and, thus, Plaintiff has failed to establish any single decision, policy or plan consistent among any of the Defendants; the motion is premature and should be considered after an order on the motions to dismiss and some discovery; and, Plaintiff's proposed notice is overly broad and would impose undue burden on the Defendants.  Resp., ECF No. 110.

Plaintiff replies that Defendants misapply and misconstrue certain case law supporting Plaintiff's motion; Plaintiff's motion is bolstered by the undersigned's findings in the Recommendation issued December 12, 2017; and, the contact information sought is reasonable and the notice language is proper.

Mindful of the "lenient" standard for conditional certification and persuaded by the cases cited by Plaintiff, the Court concludes that its only function here is to review the record to determine whether "the substantial allegations of the complaint along with any supporting affidavits or declarations" demonstrate Plaintiff and putative collective action members were "together the victims of a single policy, plan, or practice." *Beltran*, 2017 WL 4418684 at *3–*4.  Based on Plaintiff's proposed class definition, the Court will analyze whether Plaintiff and putative collective action members are similarly situated—*i.e.*, whether Plaintiff has asserted substantial allegations that they together were victims of minimum wage and/or overtime violations.

---

[3]The Tequileno Defendants joined in the response filed by the Tequila Defendants.  *See* ECF No. 112.

A.    <u>Minimum Wage Claims</u>

In the Second Amended Complaint, Plaintiff alleges that his hourly wage rates were $5.28 in 2016 and $6.28 in 2017[4]; he and others similarly situated were never informed about nor provided with notice of any tip credit claimed by the Defendants; customers would regularly leave tips on credit cards, but tips were only paid to servers in cash at the end of the shift, not in paychecks; on the pay stubs, all the tips were reported as cash tips; while in Golden, Plaintiff realized that the tips reported on his paystub were more than he actually received; and Plaintiff believes management retained tips intended for Plaintiff and others similarly situated.  Am. Compl. ¶¶ 70, 72–75.

Plaintiff also filed a declaration in which he attests that he was regularly required to clock out, then perform "side work" and cleaning activities, which took about twenty-to-thirty minutes and for which he was not paid in wages or tips.  Declaration of Jaime Fuentes, May 11, 2017 ("Fuentes Decl.") ¶ 12, ECF No. 94-2.  Plaintiff also declares that he received tips in cash each work day and paystubs reflecting his wages twice a month, and he never received oral or written notice that his tips counted as part of the minimum wage.  *Id.* ¶¶ 15, 16.  On his paystubs, all tips were reported as cash tips and, although customers paid tips on credit cards, he was only paid tips in cash and received no additional tip money in his paychecks.  *Id.* ¶ 20.  While working at the Golden restaurant, Plaintiff realized that the amount of tips reported on the paystubs was more than he actually received in cash.  *Id.* ¶ 21.  In February 2017, Plaintiff complained to the restaurant owner about the over-reporting of tips; approximately one week later, the restaurant manager, "Alejandro," accused Plaintiff of stealing tequila and fired him.  *Id.* ¶¶ 23, 24.

---

[4]The federal minimum wage during this period was $7.25. *See* https://www.dol.gov/general/topic/wages/minimumwage, last visited February 27, 2018.

Additionally, a former employee of the Defendants who worked as a "cook" in the Golden, Arvada, and Lakewood restaurants attested that he worked, on average, sixty hours per week at the restaurants and was paid $510 per week between 2009 and August 2015 and $650 per week from August to October 2015. Declaration of Ismael Orejel, June 6, 2017 ("Orejel Decl.") ¶¶ 10–12, 18. Orejel also declared that he received no tips as part of his compensation. *Id.* ¶ 20.

Defendants filed no declarations rebutting Plaintiff's arguments, but contend that Plaintiff's declarations do not support conditional certification since Plaintiff worked at only two of the five restaurants named as Defendants, and Orejel worked at none of the party restaurants within the applicable limitations period in this case. Resp. 6. Even if Defendants are correct, the Court finds that Orejel's testimony does not support conditional certification for the Plaintiff's minimum wage claim, since it demonstrates he was paid more than the minimum wage of $7.25 per hour since 2009, even without the payment of tips. *See* Orejel Decl. ¶¶ 10–12, 18 ($8.50 per hour from 2009–August 2015, and $10.83 per hour from August–October 2015). In addition, Orejel mentions nothing about over-reporting of tips or the improper retention of tips by management. *See id.*

Accordingly, the Court must determine whether the Plaintiff, himself, has made substantial allegations of a single policy, plan, or practice. Defendants cite Judge Arguello's opinion in *Avendano v. Averus, Inc.*, No. 14-cv-01614-CMA, 2015 WL 1529354 (D. Colo. Mar. 31, 2015) to support their argument that Plaintiff fails to demonstrate the necessary allegations. Resp. 7–8. However, in *Avendano*, Judge Arguello did not reject altogether the plaintiff's[5] request for

---

[5]Importantly, in *Avendano*, the plaintiff himself submitted affidavits but submitted no affidavits or declarations by potential collective action members. *See Avendano*, 2015 WL 1529354 at *5 ("In support of its [sic] motion, Plaintiff submitted two affidavits from Avendano . . . ."); *see also Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (finding the plaintiffs were not required to demonstrate at the notice stage of conditional certification that

conditional certification but, rather, limited the proposed class in accordance with the plaintiff's allegations. *See* 2015 WL 1529354 at *5–*7. Similarly, here, the Court finds that Plaintiff's allegations and declarations (including from Orejel who worked as a "cook" but received more than minimum wage even without tips) are insufficient to support the proposed class of "all non-management employees." *See id.* at *6 (the court limited the proposed class of "all current and former hourly non-exempt employees" to the plaintiff's positions of "Drivers and Helpers" only). Thus, to the extent Plaintiff is granted conditional certification for his minimum wage claim, the class must be limited to "servers and bartenders" such as the Plaintiff.

Review of the allegations in the operative Second Amended Complaint, as well as those in Plaintiff's declaration, reveal that Plaintiff and others similarly situated were required to clock out for their shifts, then continue to work on "side work" and cleaning activities for which they were not paid. Am. Compl. ¶ 105.  Moreover, Plaintiff alleges that "like others similarly situated, [he] was never informed about or provided with notice of any tip credit claimed by Defendants." *Id.* ¶ 72. Plaintiff also alleges that "Defendants had a policy and practice of rounding reported tips up in such a way as to claim the full amount of tip credit when it was not entitled to do so. In addition, Defendants' management over-reported the tips of Plaintiff Fuentes and others similarly situated on their paystubs, and kept a portion of the collected tips for themselves." *Id.* ¶¶ 93, 94.  Plaintiff contends that due to Defendants' improper conduct concerning tips, Defendants have lost entitlement to the tip credit. *Id.* ¶ 97.  Plaintiff alleges further with respect to his minimum wage claim:

> For example, in 2016, Plaintiff Fuentes and others similarly situated were paid at a

_____

other potential class members intended to participate).

base rate of $5.28 per hour and an overtime rate of $7.92 per hour (which is $5.28 times 1.5). At all relevant times the federal minimum wage rate was $7.25 per hour. Thus, the employer took a tip credit of $7.25 - $5.28 = $1.97 per hour.

*Id.* ¶ 99.

The Court finds that Plaintiff's allegations demonstrate substantial allegations that he and other servers and bartenders were together victims of a single policy, plan, or practice in the form of Defendants failing to pay servers and bartenders who are required to clock out then perform additional "side work" and cleaning activities, and also in the form of Defendants failing to pay the servers and bartenders the minimum wage by retaining collected tips for themselves.

Defendants argue that Plaintiff's allegations fail to establish that they are *all* potentially liable for his claims. In its Report and Recommendation concerning the Defendants' motions to dismiss, this Court underwent an extensive analysis of whether Plaintiff's allegations plausibly stated he was an employee of all Defendants and whether they were "covered" under the FLSA. Order, 14–31, ECF No. 114. The Court concluded that Plaintiff stated plausible allegations that the Defendants were "employers" in this case under the FLSA and that Plaintiff was a "covered individual" and Defendants were "covered enterprises" under the FLSA. *Id.* The Court incorporates its analysis here and recommends that Judge Arguello find Plaintiff's allegations are sufficient at this early stage of the litigation to support conditional certification of a collective action (as described herein) against the Defendants.

Defendants also argue that "[b]ecause discovery is currently stayed in this case, it is premature in the proceedings to decide on conditional certification." Mot. 8–9. In other words, Defendants request that the Court engage in a "second-stage" analysis of whether to certify a collective action, which is improper at this initial stage. It is only at the second stage, *after*

11

*completion of merits discovery*, that a court must evaluate the "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the ADEA before instituting suit." *Thiessen*, 267 F.3d at 1103 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). Therefore, "I decline to consider second-stage factors because . . . merits discovery has not begun." *Abdulina v. Eberl's Temp. Servs., Inc.*, No. 14-cv-00314-RM-NYW, 2015 WL 12550929, at *4 (D. Colo. Apr. 27, 2015), *report and recommendation adopted as modified*, 2015 WL 4624251 (D. Colo. Aug. 4, 2015) (citing *Cannon v. Time Warner NY Cable LLC*, No. 13-cv-02521-RM-MJW, 2014 WL 4401313, at *6 (D. Colo. Sept. 5, 2014) (rejecting defendant's proposed application of second stage factors in determining a motion for conditional certification where only pre-certification discovery had taken place), *report and recommendation adopted as modified*, 2014 WL 4980383 (D. Colo. Oct. 6, 2014)).

Finally, Defendants contend that Plaintiff's proposed class is "overbroad" in its time frame. The Court will address the parties' arguments in this regard when analyzing the Plaintiff's motion for equitable tolling. *See infra.*

The Court recommends Judge Arguello find at this initial stage that Plaintiff has asserted substantial allegations that the putative collective action members are similarly situated, based on allegations and testimony demonstrating that servers and bartenders working in the Defendant restaurants have not been paid the hourly minimum wage required under the FLSA as set forth herein. *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011) ("Generally, where putative class members are employed in similar positions, the allegation

that defendants engaged in a pattern or practice of not paying [minimum wage] is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan.") (quoting *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 433–34 (D. Kan. 2007)).

B.    Overtime Claims

Plaintiff alleges the Defendants did not compensate the Plaintiff "and other similarly situated employees at the proper rate for all hours over 40 worked in a workweek."  Am. Compl. ¶ 96.  By "proper rate," Plaintiff explains that because the Defendants are not entitled to a tip credit due to alleged improper conduct, the Defendants should have paid Plaintiff and similarly situated servers and bartenders "time and a half their 'regular rate' which in this case should have been at or above the applicable Colorado minimum wage":

> At a minimum, pursuant to federal law, for hours over 40 worked in the workweek, all subminimum wage employees, including Plaintiff, should have been paid at a rate of at least ($7.25 x 1.5) - $1.97 = $8.905 per hour. This rate is more than the overtime rate of $7.92, the rate at which they were in fact paid. (However, because his "regular rate" had to have been at least the applicable Colorado minimum wage, time and a half that amount is even more.)

*Id.* ¶¶ 97, 99; *see also* Fuentes Decl. ¶ 17.  Plaintiff attests that he worked, as a server/bartender, approximately forty-five hours per week at the Thornton restaurant and approximately fifty-five hours per week at the Golden restaurant.  Fuentes Decl. ¶¶ 9, 10.

In addition, Orejel, a cook who worked at the Golden, Arvada, and Lakewood restaurants, attests that he "usually worked six days a week" and generally worked from 9:00 a.m. to 2:00 p.m., then 5:00 p.m. to 9:00 p.m. each day.  Orejel Decl. ¶¶ 6–9.  He asserts that at each of the restaurants, he worked "around 60 hours a week to the best of [his] recollection."  *Id.* ¶¶ 10–12.  Orejel states that he made $510 per week, or $8.50 per hour, from 2009–August 2015, and $650 per week, or $10.83 per hour, from August–October 2015.  *See* Orejel Decl. ¶¶ 18–19.  If true, Orejel's testimony

13

demonstrates that he was not paid at the minimum overtime rate of time-and-a-half ($7.25 X 1.5 = $10.875) for each hour worked over forty in a workweek.

Plaintiff also relies on a declaration executed by Pedro Orejel Carranza, who worked as a cook for Tequila's and Tequileno's at the Golden, Thornton, Lakewood, and Arvada restaurants "from 2008–2016 (not continuously)."   Declaration of Pedro Orejel Carranza, March 6, 2017 ("Carranza Decl."), ¶ 2.  Carranza does not specify when he worked at each restaurant, but states that he worked more than 40 hours per week "almost every workweek in this period" and he "was never paid overtime wages for the hours beyond forty that [he] worked."  *Id.* ¶¶ 3–4.

Defendants challenge the declarations arguing Orejel and Carranza do not specify the restaurants in which they worked during the statute of limitations period and, thus, Plaintiff has failed to demonstrate substantial allegations that they were the victims of a single decision, policy, or plan.  Resp. 8.  However, the Court finds Orejel's testimony reveals that he worked in Golden in 2004 (Orejel Decl. ¶ 3), then worked at the Arvada restaurant starting in 2005 and worked there until he relocated to the Lakewood restaurant where he worked from August–October 2015 (id. ¶¶ 2, 4, 17–19).  Carranza's testimony is not as specific, but he affirms that he worked in at least one of the Defendant restaurants during the FLSA limitations period.  *See* Carranza Decl. ¶¶ 3–4.

With the above-cited lenient standard in mind, the Court recommends that Judge Arguello find at this initial stage that Plaintiff has asserted substantial allegations that the putative collective action members are similarly situated, based on allegations and testimony demonstrating that servers and bartenders, as well as cooks, working in the Defendant restaurants have not been paid overtime wages as required under the FLSA.  This Court again rejects the Plaintiff's proposed class of "all non-management employees" as overbroad.

In sum, the Court recommends that Judge Arguello grant in part and deny in part the Plaintiff's motion for conditional certification of a collective action and define the classes as follows:

1.   All current and former servers and bartenders who worked for Defendants at any time on or after October 31, 2014[6] who were required to clock out then engage in 'side work' and/or cleaning activities and who were not paid the minimum wage because managment improperly retained collected tips for themselves;

2.   All current and former servers, bartenders, and cooks who worked for Defendants at any time on or after October 31, 2014 and who worked more than forty hours per week without payment of one-and-one-half times their regular rate for those hours worked over forty in a workweek.

C.   Certification Notice

Once the Court concludes that conditional certification of an FLSA collective action is appropriate, the Court may authorize the plaintiff to disseminate a proper notice and opt-in consent form to putative collective action members.  *See Hoffman–LaRoche, Inc.*, 493 U.S. at 169–70; *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  The Court has broad discretion to modify and approve the details of the notice sent to potential opt-in plaintiffs.  *Hoffman–LaRoche*, 493 U.S. at 171.  While "[u]nder the FLSA, the Court has the power and duty to ensure that the notice is fair and accurate, [ ] it should not alter

---

[6]*See infra* (order on Plaintiff's Motion to Toll Statute of Limitations).

plaintiff's proposed notice unless such alteration is necessary." *Beltran*, 2017 WL 4418684 at *5 (citation omitted).

In *Beltran*, Judge Arguello approved a notice informing putative collective action members of the parties involved (by using neutral language), the parties' general allegations, information about the collective action designation, how and when putative plaintiffs must opt in, and the potential obligations or consequences for putative class members who choose to opt-in. *See id.*; *see also* No. 14-cv-03074-CMA, ECF No. 325-2. With Judge Arguello's approved notice in mind, the Court finds Plaintiff's proposed Notice deficient in the following ways: (1) it must contain the collective action definition set forth in this Recommendation; (2) the Notice does not identify defense counsel; (3) the term "employees" should be changed to the definition set forth in this Recommendation; (4) the term "non-management employees" should be changed to the definition set forth in this Recommendation; (5) the Notice sporadically refers to "Plaintiffs" and "Defendant," when it should refer to "Plaintiff" and "Defendants"; (6) the Notice does not inform putative opt-in plaintiffs of their potential obligations in the lawsuit—*i.e.*, "while this lawsuit is pending you may be required to submit copies of documents to and written answers to questions by Tequila's or to testify under oath at a deposition, hearing or trial in Colorado"; (7) Section 9 does not inform putative plaintiffs of their options for representation—*i.e.*, "If you chose to join in the lawsuit you may (1) represent yourself, (2) hire a lawyer of your choice, or (3) hire [Plaintiffs' attorney]. . . ."; (8) the Notice does not contain language indicating the Court's neutrality in this action—i.e., "THIS NOTICE HAS BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFFS' CLAIMS OR DEFENDANTS' DEFENSES."; and

(9) the Notice identifies Plaintiff's counsel as administering the collective action, when it would be just and proper to use a third-party administrator to oversee the collective action.

In addition, the Defendants object that the Notice is overly broad as against all Defendants, since Plaintiff has failed to demonstrate the Defendants make up an "enterprise." Resp. 11. Again, the Court incorporates here its analysis and findings from the Report and Recommendation that the Defendants are employers in this case under the FLSA.

Defendants also object that Plaintiff's proposed time frame is overly broad. Resp. 12. The Court will address Defendants' objection in analyzing Plaintiff's motion to toll the statute of limitations. *See infra*.

In light of the identified deficiencies, the Court recommends that Judge Arguello order the parties to confer and construct a mutually-agreed Notice and Consent to Join form, and if they cannot agree as to any terms on such form, to appear before the Court for a ruling as to any disagreements.

Further, Defendants contend that Plaintiff's request for contact information is overbroad. Resp. 13–14. The Court agrees to the extent the Plaintiff asks for "title(s)/position(s) . . . of all current and former non-management employees"; the Court has already determined that the putative collective action should be limited to servers and bartenders for the minimum wage claim and servers, bartenders, and cooks for the overtime claim. However, the Court rejects Defendants' argument that the Court should adopt "the preferred method of notice"—U.S. mail—and limit the Plaintiff's request to names and addresses only. Defendants cite *Reab*, 214 F.R.D. at 630 in which the Honorable Lewis T. Babcock found the "preferred" method of notice— first class mail—"ensures the integrity of a judicially controlled communication directed to the intended

audience." This Court respectfully notes that *Reab* was decided nearly sixteen years ago when the culture and environment did not enjoy the high technology of today's climate and, thus, distinguishes *Reab* accordingly (*see id.*), and finds that the production of names and home addresses only is insufficient here.

In line with Judge Arguello's 2017 decision in *Beltran*, the Court recommends that Plaintiff be permitted to request the following information:

- The names of all servers, bartenders, and cooks who worked at the Defendant restaurants [within the time period discussed below];

- The servers', bartenders', and cooks' last known addresses;

- Any and all e-mail addresses associated with the servers, bartenders, and cooks;

- Any and all telephone numbers (including cellular numbers) associated with the servers, bartenders, and cooks;

- Any and all other contact information for the servers, bartenders, and cooks, such as Facebook ID, Twitter handle, Skype address, or the like; and

- The servers', bartenders', and cooks' dates of employment.

Plaintiff also seeks to know the servers', bartenders', and cooks' "primary languages." Mot. 19. The Court finds such request places an undue burden on the Defendants. If true, as Plaintiff argues, that Defendants' employees are "transient and turnover is high," the amount of information requested may be substantial and, in terms of proportionality, the Court finds Plaintiff has proffered no persuasive reason for requesting this information. Therefore, this Court recommends that Judge Arguello deny Plaintiff's request for information regarding the servers', bartenders', and cooks' primary languages.

At the same time, Plaintiff requests that the Notice be printed in English, Spanish, and "any other primary languages identified by Defendants." Mot. 19. Defendants do not object that the Notice be printed and distributed in languages other than English. Accordingly, the Court recommends that Judge Arguello grant Plaintiff's request that the Notice be printed in English and Spanish, as well as any other language(s) the *Plaintiff* may discern as necessary to provide proper and complete notice to putative collective action members.

As for distribution of the Notice, Defendants stand on their argument that the Court adopt *Reab*'s "preferred" method of the U.S. mail only. Again, the Court rejects this argument for reasons stated herein. Notably, Plaintiff asserts (without rebuttal) that Defendants' employees "are transient and turnover is high" and, thus, mail may not reach the majority of putative collective action members. Mot. 14. If Plaintiff's assertion is true, this Court agrees.

As set forth in *Beltran*, Judge Arguello granted the plaintiff permission to distribute his notice "via mail, email, publication, and other electronic means, including social media platforms like Facebook." 2017 WL 4418684 at *6 ("The Court agrees that electronic notice through social media platforms is particularly appropriate for classes comprised of largely young, largely transient unnamed plaintiffs, because email addresses and physical addresses may not "provide a reliable, durable form of contact . . . .") (citation omitted). Thus, here, the Court recommends that Judge Arguello grant the Plaintiff's motion and allow distribution of the Notice via U.S. Mail, email, text message, and social media. *See* Mot. 17.

Finally, Defendants object to Plaintiffs' request that the Notice be posted at Defendants' restaurants "in locations frequented by putative Plaintiffs" as unduly burdensome. Mot. 18; Resp. 15. The Court finds that the posting of the Notice (itself intended to benefit the Plaintiff) in the

Defendants' restaurants could be potentially confusing to Defendants' employees, and result in prejudice to the Defendants, particularly if the Notice is posted in the same area as neutral notices concerning the employees' rights under the law.  Furthermore, although unlikely that customers might see the Notice in areas "frequented by putative Plaintiffs," the possibility that customers or other non-employees having access to the Notice "could negatively and unfairly impact Defendants' business interests." *Beltran*, 2017 WL 4418684 at *6.

In sum, the Court respectfully recommends that Judge Arguello grant in part and deny in part the Plaintiff's motion by incorporating this Court's suggestions for modifying the content of the Notice; permitting the Notice to be printed and distributed in English, Spanish, and any other language the Plaintiff discerns as necessary to provide proper and complete notice to putative collective action members; and permitting the Notice to be distributed via U.S. Mail, email, text message, and social media.  In addition, the Court recommends that Judge Arguello allow the Plaintiff to request from Defendants contact information for putative collective action members as described herein.

## II.     Motion to Equitably Toll the Statute of Limitations

Plaintiff seeks an order tolling the statute of limitations for his FLSA claims "from the date of service of the original Complaint in this action . . . i.e., May 23, 2017 through a date 90 days after the putative members receive notice of this lawsuit." Mot. 1. Judge Arguello has described the legal standard for Plaintiff's motion as follows:

> Unlike Rule 23 class actions, the commencement of an FLSA collective action does not toll the statute of limitations for putative class members. 29 U.S.C. § 256(b). Thus, absent an order from the court tolling the applicable statute of limitations period, the limitations period for each putative member of the class is three years (assuming, as is the case here, the allegation of a willful violation of the statute), prior to the date he or she opts into the action. *Id.* §§ 255(a), 256(b). The statute, in

> other words, contains a look-back provision which limits to three years from opt-in
> how far back a plaintiff can look to find violations by his or her employer. *In re Bank
> of Am. Wage & Hour Employment Litig.*, 10–MD–2138–JWL, 2010 WL 4180530,
> at *2 (D. Kan. Oct. 20, 2010).

*Avendano*, 2015 WL 1529354 at *9. Judge Arguello recognized (as does the Plaintiff here) that "the Tenth Circuit has not addressed the circumstances in which the equitable tolling doctrine applies to FLSA claims in particular." *Id.* "It seems relatively clear, however, that regardless of the standard employed, 'equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline **unavoidably arose** from circumstances **beyond that litigant's control**." *Id.* (quoting *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012)).

Plaintiff asserts that Defendants were aware as of May 23, 2017, when they were served with the original Complaint, that Plaintiff intended to seek employee names and contact information for distribution of the Notice and Consent to Join. Mot. 2–3. Plaintiff contends that, "[d]espite the low bar for plaintiffs in obtaining collective certification (and the correlative high probability of the granting of such motion), Defendants refused to stipulate or voluntarily provide this information." *Id.* at 3. Plaintiff cites cases outside of this circuit for the proposition that equitable tolling is appropriate "to avoid inequitable circumstances." *Id.* at 2. He adds that should the Court deny his request to toll the statute of limitations from the time Defendants were served, in the alternative, Plaintiff requests "that it be tolled as of the date of the filing of this Motion." Mot. 4.

Defendants counter that Plaintiff, not the Defendants, "caused a 172-day lapse of time from the filing of the original Complaint on May 12, 2017 until the filing of the Motion . . . on October 31, 2017" and "Defendants play no role in Plaintiff's delay of the proceedings thus far." Resp. 2. Defendants argue that, under prevailing law, Plaintiff's proffered justification for equitable tolling is insufficient, and the Plaintiff has failed to show that the opt-in members "were ever misled or

prevented from filing suit that would afford them relief." *Id.* at 5.  Defendants contend, "Without a specific showing that potential plaintiffs have been misled or lulled into inaction, they are 'presumed to be aware of the facts and circumstances of their employment, and it is those facts and circumstances that allegedly form the basis of the FLSA claims of the plaintiffs.'" *Id.* at 6 (quoting *Coldwell v. Ritecorp Envtl. Prop. Sols.*, No. 16-cv-01998-NYW, 2017 WL 1737715, at *11 (D. Colo. May 4, 2017)).

Plaintiff replies relying on *Stransky* and other similar cases which considered "five factors" in determining whether to equitably toll the statute of limitations and none of them include whether the parties engaged in "bad behavior."  However, if the Court determines to consider bad behavior in this matter, the Plaintiff points to Defendants' purported conduct in allegedly "threatening" a putative plaintiff not to join this action.  Resp. 8.

Judge Arguello cites *Stransky* in her opinion in *Avendano*, but not for the same propositions offered here by the Plaintiff.  *See Avendano*, 2015 WL 1529354 at *9.  Rather, Judge Arguello makes clear that equitable tolling is proper only when "any potential opt-in plaintiff was deceived, misled, lulled into inaction, or otherwise faced extraordinary circumstances that made it impossible for them to file a timely FLSA claim." *Id.*

Even with this purported "stricter" standard, however, the Court finds that equitable tolling is proper in this case from the date Plaintiff filed the motion, October 31, 2017, to ninety days after the opt-in plaintiffs receive notice of this lawsuit.  *See Stransky*, 868 F. Supp. 2d at 1182.  Plaintiff does not persuade the Court that the statute of limitations should be tolled from May 23, 2017; although this apparently was the date Defendants were notified of the lawsuit and, soon thereafter, Defendants learned of Plaintiff's intent to seek contact information for potential collective action

members, Plaintiff fails to explain the six-month delay between service of the original Complaint and the filing of this motion. *See id.* ("In the context of an opt-in collective action, diligence is measured by whether Plaintiffs opted-in when given the opportunity, not by whether Plaintiffs chose to initially bring a lawsuit.") (quoting *Baden–Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 828–29 (S.D. Ohio 2007)).

However, the Court heard testimony from a former employee of Tequila's, Ismael Orejel, on October 16, 2017, who determined to "get out" of this lawsuit after he learned from his brother, who also worked at Tequila's, that Defendant Rodrigo Sanchez had "a signed document with about 10 employees . . . saying that [Orejel] was drinking a lot at work, that [Orejel] wasn't working. . . . And [Orejel's] brother told [Orejel] that then [Sanchez] could file a lawsuit against [Orejel and his brother] to pay him back for all that money. . . . Before opting out or before deciding to opt out, [Sanchez] had told [Orejel's] brother that [Orejel] should sign a letter saying that [Orejel] wanted to opt out." October 16, 2017 Hr'g Tr. 38: 5–25, ECF No. 91. The Court finds that Defendant's conduct, if true, serves to demonstrate that putative collective action members were or could have been "deceived, misled, lulled into inaction, or otherwise faced extraordinary circumstances that made it impossible for them to file a timely FLSA claim." *See Avendano,* 2015 WL 1529354 at *9.

Accordingly, the Court recommends that Judge Arguello grant in part and deny in part the Plaintiff's motion to equitably toll FLSA's statute of limitations in this case from October 31, 2017 to ninety days after the putative opt-in plaintiffs receive notice of this lawsuit.

## CONCLUSION

This Court has determined that Plaintiff has asserted substantial allegations demonstrating he and others similarly situated were together the victims of a single policy, plan, or practice in

violation of the FLSA, and recommends that Judge Arguello grant conditional certification of a collective action and define the classes as follows: (1)"All current and former servers and bartenders who worked for Defendants at any time on or after October 31, 2014 who were required to clock out then engage in 'side work' and/or cleaning activities and who were not paid the minimum wage because Defendants improperly retained collected tips for themselves; and (2) All current and former servers, bartenders, and cooks who worked for Defendants at any time on or after October 31, 2014 and who worked more than forty hours per week without payment of one-and-one-half times their regular rate for those hours worked over forty in a workweek."

Also, the Court has determined that Plaintiff's request for contact information, as modified herein, is proper and, thus, the Court recommends that Judge Arguello permit Plaintiff to seek the information from Defendants.

In addition, the Court has determined that Plaintiff's proposed Notice and Consent to Join contains certain deficiencies and recommends that Judge Arguello approve the Notice and Consent to Join, modified in accordance with this Court's suggestions.  The Court also recommends that Judge Arguello permit the Notice to be printed and distributed in English, Spanish, and any other language the Plaintiff discerns as necessary to provide proper and complete notice to putative collective action members, and permit the Notice to be distributed via U.S. Mail, email, text message, and social media.

Finally, the Court has determined that Plaintiff fails to demonstrate equitable tolling is proper in this case from the date he served the original Complaint; however, the Court finds equitable tolling proper from the date Plaintiff filed the present motion, October 31, 2017.  Consequently, the Court recommends that Judge Arguello grant in part and deny in part the Plaintiff's motion and

permit the FLSA claims(s) in this case to be equitably tolled from October 31, 2017 to ninety days after the putative opt-in plaintiffs receive notice of this action.

THEREFORE, based on the entire record and for the reasons stated above, the Court respectfully recommends that the Plaintiff's Motion for Production of Contact Information and Judicial Notice Pursuant to 29 U.S.C. § 216(b) [filed October 31, 2017; ECF No. 94] and the Plaintiff's Motion to Equitably Toll the Statute of Limitations [filed October 31, 2017; ECF No. 95] be **granted in part and denied in part** as set forth herein.[7]

Respectfully submitted at Denver, Colorado, this 2nd day of March, 2018.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge

---

[7]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991)).