**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-01180-CMA-MEH

JAIME FUENTES, in his individual capacities and on behalf of others similarly situated,

      Plaintiff,

v.

COMPADRES, INC., *d/b/a* Tequila's (Golden)
TEQUILAS THORNTON NUMBER 6, LLC, *d/b/a* Tequila's (Thornton)
TEQUILAS OF THORNTON, LLC, *f/d/b/a* Tequila's (Thornton)
EL AGAVE AZUL, INC., *d/b/a* El Tequileño (Arvada),
EL NOPAL, INC., *d/b/a* El Tequileño (Lakewood),
EL TEQUILENO #1, *d/b/a* El Tequileño (Aurora)
JOSE RAIGOZA DEJESUS GARCIA, and
RODRIGO SANCHEZ,

      Defendants.

---

**ORDER ADOPTING IN PART AND REJECTING IN PART THE RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE MICHAEL E. HEGARTY**

---

      This matter is before the Court on the Recommendation of United States

Magistrate Michael E. Hegarty (Doc. # 114), wherein he recommends that this Court

grant in part and deny in part Defendants'[1] Motions to Dismiss (Doc. ## 80, 81) Plaintiff

Jaime Fuentes's Second Amended Complaint (Doc. # 63). All parties timely filed

---

[1] There are two sets of Defendants in this case. The "Tequila Defendants" are Compadres Inc., Tequilas Thornton Number 6, LLC, Tequilas of Thornton, LLC, and Jose Raigoza DeJesus Garcia. The "Tequileño Defendants" are El Agave Azul, Inc., El Nopal, Inc., El Tequileño #1, and Rodrigo Sanchez. The Tequila and Tequileño restaurants are each separate legal entities with separate principal places of business. (Doc. # 63 at ¶¶ 43–44; 46–48.)

objections to the Recommendation, essentially challenging it in its entirety.[2]   (Doc. ##

119, 120, 121.)  The Court must therefore review the issues de novo and, in so doing,

"may accept, reject, or modify the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(3).

Having conducted the required de novo review, the Court adopts in part and rejects in

part the Recommendation for the following reasons.

## I.     BACKGROUND

Magistrate Judge Hegarty's Recommendation provides an extensive recitation of

the factual and procedural background in this case.  The Recommendation is

incorporated herein by reference.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Thus, the factual background of this dispute will be repeated only to the extent

necessary to address the parties' objections.

The Defendants are comprised of restaurants in Colorado as well as the alleged

owners or managers of the restaurants and one real estate holding company associated

with the restaurants.  Plaintiff worked as a waiter and bartender at two of the

restaurants—Compadres, Inc. (Golden) and Tequilas Thornton Number 6, LLC

(Thornton)—from October 24, 2016 to February 22, 2017.  Plaintiff alleges that, during

his employment, Defendants improperly failed to pay him overtime, retained tips for

---

[2] The only portions of the Recommendation that were not objected to are Magistrate Judge Hegarty's conclusions that Plaintiff's Complaint states plausible claims under the FLSA and CWCA for (1) overtime violations and (2) the improper retention of tips.  (Doc. # 114 at 33–38.) "[T]he district court is accorded considerable discretion with respect to the treatment of unchallenged magistrate [conclusions]."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).  In the absence of timely objection, the district court may review a magistrate judge's conclusion under any standard it deems appropriate.  *Id.*  After reviewing the Recommendation, in addition to applicable portions of the record and relevant legal authority, the Court is satisfied that these unchallenged conclusions are sound and not clearly erroneous or contrary to law. The Court therefore affirms and adopts them.

management, failed to provide adequate notice related to the tip credit, and over-reported his tips on his pay stubs.

Plaintiff accordingly commenced this lawsuit on behalf of himself and others similarly situated, bringing claims against Defendants under the Fair Labor Standards Act (FLSA) and the Colorado Wage Claim Act (CWCA). On September 29, 2017, each set of Defendants filed a Motion to Dismiss Mr. Fuentes's claims under Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. ## 80, 81.) Combined, Defendants request that Plaintiff's Complaint be dismissed entirely. Plaintiff disputes that his Complaint warrants dismissal under Rule 12(b)(1) or (6), but requests leave to amend should the Court find it insufficient. (Doc. # 89.)

## II.   GOVERNING LAW

### A.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*24, 518 F.3d 1186, 1189 (10th Cir. 2008). Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint' s allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003));

*see Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  The instant motions launch a factual attack on this Court's subject matter jurisdiction.

### B.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Rule 12(b)(6) provides that a court may dismiss a complaint for " failure to state a claim upon which relief can be granted."  Fed.  R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must contain sufficient factual matter, taken as true and viewed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility in this context means that the plaintiff pled sufficient facts to elevate the claims above the level of mere speculation and allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

### III.    <u>FLSA CLAIMS</u>

As pertinent here, Defendants argue that the Plaintiff's FLSA Claims should be dismissed because (1) with respect to Tequilas of Thornton, LLC and the Tequileño Defendants, Plaintiff does not adequately demonstrate that he had an employment relationship with them; and (2) with respect to all Defendants, Plaintiff fails to plausibly allege that they are an "enterprise engaged in commerce."  Defendants also request dismissal of Plaintiff's FLSA claims to the extent they are based on non-actionable recordkeeping failures.  The Court considers each argument in turn.

**A. EMPLOYMENT RELATIONSHIP**

1. Jurisdictional or Merits Element

Before turning to the allegations in Plaintiff's Complaint, the Court first considers whether the existence of an employer-employee relationship is a jurisdictional element of an FLSA claim, properly assessed under 12(b)(1), as Defendants contend, or a merits element of the claim, better-suited for review under Rule 12(b)(6), as Plaintiff contends and Magistrate Judge Hegarty agreed.[3]

In *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), the United States Supreme Court prescribed a "readily administrable bright line" to distinguish between merits and jurisdictional challenges. . That is, if Congress "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," that is the end of the matter. *Id.* at 515–16, 126. But, if Congress "does not rank a statutory limitation on coverage as jurisdictional," a court must not treat it as such. *Id.* at 516. In making this determination, courts examine a provision's "text, context, and relevant historical treatment," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010), and ask whether "traditional tools of statutory construction ... plainly show that Congress imbued a procedural bar with jurisdictional consequences[,]" *United States v. Kwai Fun Wong*, 575 U.S. —— (2015).

---

[3] The Court notes that there are three practical consequences of deeming an element "jurisdictional." First, if the Court has any doubt that the element has been satisfied, the Court must raise the issue sua sponte—it cannot wait for a party to raise the question, or deem it waived because a party did not timely raise it. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986). Second, a defendant challenging subject matter jurisdiction under Rule 12(b)(1) can introduce evidence beyond the pleadings. *Davis ex rel. Davis v. United States*, 342 F.3d 1282, 1296 (10th Cir. 2003). Third, in a Rule 12(b)(1) motion, the burden of proof ultimately falls on the Plaintiff to establish subject matter jurisdiction, *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974), rather than on the defendant to disprove it.

Applying these principles, the Court concludes that the existence of an employee-employer relationship is non-jurisdictional and, thus, properly assessed under Rule 12(b)(6), not Rule 12(b)(1). In so concluding, the Court recognizes that some courts, including one in this district, have treated the existence of an employee-employer relationship as a jurisdictional element. *See Murphy v. Allstaff Med. Res., Inc.*, No. 16-cv-02370-WJM, 2017 WL 2224530, at *3 (D. Colo. May 22, 2017); *Doe I v. Four Bros. Pizza*, No. 13 CV 1505 VB, 2013 WL 6083414, at *4–5 (S.D.N.Y. Nov. 19, 2013); *Li v. Renewable Energy Solutions, Inc.*, 2012 WL 589567, at *5 (D.N.J. Feb. 22, 2012). This Court, however, respectfully disagrees with these authorities for several reasons.

First and foremost, unlike the provision at issue in *Arbaugh*, Congress has not "clearly stated" that the employee-employer relationship is a "threshold limitation" on the FLSA's scope that "shall count as jurisdictional." 546 U.S. at 516. Several provisions of the FLSA speak to the employee-employer relationship, including § 216(b), which is often referred to as the jurisdiction-conferring provision and provides as follows:

> An action to recover the liability prescribed . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

This provision of course mentions the Court's jurisdiction but, unlike the examples cited in *Arbaugh*, it does not contain an express and straightforward jurisdiction-limiting clause, such as "the district courts shall have original jurisdiction over . . ." or "the

district courts are hereby vested with jurisdiction over . . . ."  *See id.* at 516, n. 11

(highlighting examples of statutes conferring subject-matter jurisdiction).

Instead, § 216's single reference to jurisdiction states that certain actions may be

maintained "in any Federal or State court of competent jurisdiction."  To say that an

action may be maintained in a "court of competent jurisdiction"—that is, in a court that

has jurisdiction—presupposes that the court to which it refers derives "competent

jurisdiction" from some other source.  In this case, that other source is 28 U.S.C. §

1331, which assigns the federal district court original jurisdiction over all civil actions

"arising under the . . . laws . . . of the United States."[4]  *See Breuer v. Jim's Concrete of*

*Brevard, Inc.*, 538 U.S. 691, 694 (2003) (although the FLSA provides that an action

"may be maintained . . . in any Federal or State court of competent jurisdiction," 29

U.S.C. § 216(b), "the district courts would in any event have original jurisdiction over

FLSA claims under 28 U.S.C. § 1331 . . . and § 1337(a).").  Plaintiff's action arises

under the FLSA, plainly a law of the United States.  And nothing in § 1331 conditions its

jurisdictional grant on compliance with the FLSA's employee/employer relationship

requirement.  In essence, § 216 is not primarily concerned with granting or defining

jurisdiction; it appears intended to create a collective right of action for injured

employees.  Whether plaintiffs have stated a cause of action under § 216(b) is therefore

a question that goes to the merits of the case rather than to the Court's subject-matter

jurisdiction.  *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91–92 (1998) (the

failure of a cause of action does not produce a failure of jurisdiction).

---

[4] The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28
U.S.C. § 1367.

Second, employee/employer *coverage* under the FLSA (as opposed to the existence of an employee/employer *relationship*) has historically been treated, including in this Circuit, as non-jurisdictional. In other words, questions of who is an "employer" and who is an "employee" under the FLSA are substantive ingredients of a meritorious FLSA claim rather than elements of subject-matter jurisdiction. *See, e.g.*, *Murphy*, 2017 WL 2224530, at *4 (FLSA coverage is not a jurisdictional inquiry); *Fuqua v. Celebrity Enters., Inc.*, No. 12-cv-00208-WJM, 2012 WL 4088857, at *2 (D. Colo. Sept. 17, 2012) (same). This Court sees no reason why the existence of an employee/employer *relationship* under the FLSA would implicate the court's subject-matter jurisdiction when questions of employee/employer *coverage* under the FLSA do not. Indeed, when analyzing coverage, courts generally turn to the FLSA's definition section, coupled with the "economic reality" test; likewise, a determination of whether there is an employee/employer relationship under the FLSA invokes the same statutory provisions and test. *See e.g., Johnson v. Unified Gov't of Wyandotte Cnty.*, 371 F.3d 723, 729 (10th Cir. 2004) (using the economic reality test to examine whether plaintiff is an employee under the FLSA); *see also Doe I*, 2013 WL 6083414, at *5 (determining whether an employee-employer relationship existed by examining the "economic realities" of such relationships); *Li*, 2012 WL 589567, at *4–5 (same).

For these reasons, as well as those articulated by Magistrate Judge Hegarty, the Court concludes that  the existence of an employee/employer relationship under the FLSA is an element of the plaintiff's meritorious FLSA claim and does not implicate this Court's threshold subject matter jurisdiction. The Court therefore declines the

Defendants' request to analyze the issue under Rule 12(b)(1) but instead turns to evaluate the plausibility of Plaintiff's Complaint pursuant to Rule 12(b)(6).[5]

2. Plausibility under Rule 12(b)(6)

For the following reasons, the Court concludes that Plaintiff has sufficiently pleaded an employment relationship with the Tequila Defendants and Defendant Sanchez, but he has not sufficiently pleaded an employment relationship with the Tequileño Corporate Defendants.[6]

*a. Law*

Under the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). An "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA "defines the verb 'employ' expansively to mean, 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)). Consistent with these broad definitions, "[t]he Supreme Court has instructed courts to construe the terms 'employer' and 'employee' expansively under the FLSA." *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

---

[5] For the first time in their Objection to the Recommendation, the Tequileño Defendants alternatively submit that the existence of an employer-employee relationship is both jurisdictional and substantive, which, they contend, supports converting their motion to dismiss into a motion for summary judgment. The Court declines this invitation to convert the motion because the Plaintiff has not yet had an opportunity to conduct discovery and a motion for summary judgment is premature.

[6] The Tequileño Corporate Defendants are El Agave Azul, Inc., El Nopal, Inc., and El Tequileño #1.

Separate persons or entities that share control over an individual worker may be deemed joint employers under the FLSA.[7]  According to the Department of Labor regulation:

> if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the [FLSA].

29 C.F.R. § 791.2(a) (emphasis added); *see also Falk v. Brennan*, 414 U.S. 190, 195 (1973) (observing in a FLSA case that apartment building maintenance workers were employed by both building management company and building owners).  "[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions."  29 C.F.R. § 791.2(a).  The regulation states that a joint employment relationship generally will be considered to exist in situations such as:

(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

---

[7] Magistrate Judge Hegarty thoroughly analyzed the difference between the joint and single employer doctrines, ultimately concluding that the joint employer doctrine, rather than the single employer doctrine, applies in this case.  Plaintiff does not challenge that conclusion in his Objection (Doc. # 121), although he "ask[s] the Court to take another look" in his Response to Defendants' Objections (Doc. # 124).  If Plaintiff disagrees with Magistrate Hegarty's conclusion, he should have raised that challenge in his Objection.  Nonetheless, the Court, having "take[n] another look," agrees with Magistrate Hegarty, for the reasons he articulated in his Recommendation, that the "single integrated enterprise" concept is inapplicable to the determination of FLSA liability.  Indeed, this Court has found no Tenth Circuit opinion applying the single employer doctrine in these circumstances.

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

Where the alleged relationship does not fit readily into one of these three examples, courts are to consider the "economic realities" of the relationship between the employee and the putative employer(s), grounding the analysis in "economic reality rather than technical concepts."[8] *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961).

Applying the economic realities test to joint employers, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Schindler v. Whiting Petroleum Corp.*, No. 17-CV-1051-WJM-NYW, 2017 WL 5969814, at *3 (D. Colo. Dec. 1, 2017); *see also, e.g.*, *Zachary v. Rescare Okla., Inc.*, 471 F. Supp. 2d 1175, 1179 (N.D. Okla. 2006) (applying these four factors to joint employers).. "No one of the four factors standing alone is dispositive. Instead, the [. . .] test encompasses the totality of circumstances." *Schindler*, 2017 WL 5969814, at *3; *Goldberg*, 366 U.S. at 33; *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

 b. *Analysis*

---

[8] Contrary to Plaintiff's contentions before the Magistrate Judge, "district courts within the Tenth Circuit, including Colorado, have applied the economic realities test at both the motion to dismiss and summary judgment phase." *Coldwell v. Ritecorp Envtl. Prop. Sols.*, 2017 WL 1737715, at *5 (D. Colo. May 4, 2017).

It is undisputed that Plaintiff has an employment relationship with Defendant Compadres, Inc. (Golden); Tequilas Thornton Number 6, LLC (Thornton); and Defendant Garcia.  Defendants, however, argue that Plaintiff has not adequately alleged an employment relationship with Tequilas of Thornton, LLC or any of the Tequileño Defendants.

To begin, the Court finds that Plaintiff has adequately pleaded an employment relationship with Defendant Sanchez.  Plaintiff alleges that Defendant Sanchez is a co-owner with Defendant Garcia of Tequilas Thornton Number 6, LLC (Thornton).  (Doc. # 63 at ¶ 31.)  Plaintiff further contends that Defendant Sanchez "serves and/or has served as a manager, general manager, or de facto director of operations of (inter alia) the Golden and Thornton Tequila's locations."  (*Id.* at ¶ 33.)  In that role, Defendant Sanchez is "instrumental" in "setting and executing various pay-related policies"; he makes "daily business decisions, direct[s] work and actively create[s] policies relating to the interests of the restaurant employees."  (*Id.* at ¶ 35.)  Plaintiff further contends that Defendant Sanchez

> actively participated in the business of the Tequila's restaurants in at least Golden, Thornton, Aurora, Lakewood, and Arvada and has exercised substantial control over the functions of the company's employees, including Plaintiff Fuentes and others similarly situated. For example, in addition to having affiliation with setting policies and directing activities at the Golden and Thornton locations where Plaintiff Fuentes worked, he also hired workers, set their rates of pay, had the authority to fire them, and oversaw other "day to day" restaurant operations and management in all five locations.

(*Id.* at ¶ 41.) These allegations, taken as true, are sufficient to support an employment relationship between Plaintiff and Defendant Sanchez. Defendants' attempt to undermine the merits of these well-pleaded allegations provides insufficient grounds for dismissal of Defendant Sanchez at this stage in the litigation.

With respect to the Tequileño Corporate Defendants, the Court finds Plaintiff's Complaint is insufficient to overcome dismissal under Rule 12(b)(6). Plaintiff has not alleged that he worked for any of the Tequileño Corporate Defendants. Nor has he alleged that he performed work that simultaneously benefited these Defendants, and it does not appear, nor has it been alleged, that there existed any arrangement involving the Tequileño Corporate Defendants to share Plaintiff's services. Likewise, Plaintiff's Complaint is devoid of any allegations suggesting that the Tequileño Corporate Defendants "exercise[d] significant control" over him, by way of, for example, hiring or firing him, setting his work schedule, determining his pay, or maintaining his records. *See Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002).

Magistrate Hegarty nonetheless concluded that Plaintiffs Complaint is sufficient because it plausibly contends that the Tequileño Corporate Defendants had an employment relationship with putative "persons similarly situated to him," i.e. future collective action members. (Doc. # 114 at 25–26.) This Court respectfully disagrees with that conclusion, "for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to

represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. 2013) ("Plaintiffs [may not] bring suit against the other [restaurants] based on the composition of a future collective.").  In other words, the fact that future unknown and unnamed class members *may* have a potential employment relationship with the Tequileño Corporate Defendants is insufficient to demonstrate that Plaintiff *currently* has an employment relationship with these Defendants, particularly when allegations of a joint employer relationship are absent.

Magistrate Judge Hegarty also concluded that Plaintiff sufficiently pleaded an employment relationship with the Tequileño Corporate Defendant by alleging that Defendants Garcia and Sanchez jointly owned, managed, and controlled the Tequila's *and* Tequileño Corporate Defendants and their employees.  Again, the Court respectfully disagrees with this conclusion.  That Defendants Garcia and Sanchez exercised control over the employees of all Corporate Defendants does not necessarily mean that the Tequileño Corporate Defendants themselves exercised control over the Tequila Corporate Defendants' employees and vice versa.  In other words, although Plaintiff sufficiently alleges that he was commonly controlled by Defendants Garcia, Sanchez, and the Tequila Corporate Defendant restaurants, he has not alleged any control by the Tequileño Corporate Defendants.  Thus, considering the economic realities of the situation, the Court finds that Plaintiff has not plausibly alleged that the Tequileño Corporate Defendants—El Agave Azul, Inc., El Nopal, Inc., El Tequileño #1—

are his "employers" under the FLSA.  Pursuant to Rule 12(b)(6), the Court therefore

dismisses those entities without prejudice.[9]

With respect to the Tequilas of Thornton, LLC, the Court also finds Plaintiff's

Complaint is insufficient to overcome dismissal under Rule 12(b)(6).  Plaintiff's

Complaint states that

> Defendant Tequilas of Thornton, LLC is a delinquent
> corporation doing business within the County of Adams, and
> whose principal place of business is listed with the Colorado
> Department of State as being located at 224 Berthoud Way,
> Golden CO 80401. Its registered agent is listed with the
> Colorado Department of State as Jose E Garcia at the same
> address. Upon information and belief this entity is a holding
> company for the real estate associated with the Thornton
> [Tequila's Restaurant] location, and is or at relevant times
> has been therefore part of the enterprise.

(Doc. # 63 at ¶¶ 32, 45.)  He adds that Defendant Sanchez also resides at the listed

address and that Defendant Garcia has an "ownership interest in and/or is a member of

Tequilas of Thornton, LLC." (*Id.* at ¶ 21.)  Plaintiff has not, however, alleged that he

worked for Tequilas of Thornton, LLC; that his service for the Tequila Defendants jointly

benefited Tequilas of Thornton, LLC; or that Tequilas of Thornton, LLC exercised any

control over him, by way of hiring or firing, setting his work schedules, determining his

pay, or maintaining his records.  Indeed, as Plaintiff concedes, Tequilas of Thornton,

LLC is little more than a real estate holding company.

---

[9] Because this case is still in the early stages of litigation, the Court cannot conclude that
allowing Plaintiff the opportunity to amend the Complaint would be futile.  Dismissal without
prejudice is therefore warranted.  However, the Court does not presently grant Plaintiff's request
for leave to amend because he has not complied with local federal rules applicable to such a
request.  *See* D.C.COLO.LCivR 7.1 ("A motion shall not be included in a response or reply to
the original motion. A motion shall be filed as a separate document."); D.C.COLO.LCivR 15.1
(requiring a motion for leave to amend to include, as an attached exhibit, a copy of the proposed
amended pleading).

Nonetheless, although recognizing this "a close question," Magistrate Judge Hegarty found that Plaintiff's allegations that Defendants Garcia and Sanchez were affiliated with Tequilas of Thornton, LLC were sufficient to show that Tequilas of Thornton, LLC "supervise[d] and control[led] the Plaintiff's employment conditions." The Court respectfully disagrees. The facts that (1) Defendants Sanchez and Garcia allegedly reside at the same address where the Tequilas of Thornton, LLC is principally located and (2) Defendant Garcia has an ownership interest in the LLC are insufficient to demonstrate that the LLC, a real estate holding company, exercised any control, singularly or jointly, over Plaintiff's employment. *See Crumbling v. Miyabi Murrells Inlet, LLC*, 192 F. Supp. 3d 640, 646-647 (D. S.C. 2016). ("The Court must determine whether each defendant could be held liable to each plaintiff. Despite the FLSA's stated goal of efficiency in adjudicating similarly situated employees' claims at the same time, collective actions pursuant to § 216(b) may only be maintained where the named plaintiffs were employed by each of the Defendants.")

Thus, considering the economic realities of the situation, the Court finds that Plaintiff has not plausibly alleged the Tequilas of Thornton, LLC is his "employer" under the FLSA. The Court therefore dismisses Plaintiff's FLSA claims against Tequilas of Thornton, LLC without prejudice.[10]

## B. ENTERPRISE ENGAGED IN COMMERCE

---

[10] The Complaint expressly states that the LLC is a real estate holding company, not a Tequila's or Tequileño restaurant or an owner or manager of those restaurants. Therefore, it appears unlikely that Plaintiff could plausibly allege that Tequilas of Thornton, LLC exercised control over his employment, work schedule, rate of pay, or employment records. Nonetheless, the Court believes it would be premature to find that there is no circumstance under which Plaintiff could amend his Complaint to state a valid claim against Defendant Tequilas of Thornton, LLC.

Next, the Court addresses the Defendants' contention that Plaintiff has failed to sufficiently plead that they constitute an "enterprise engaged in commerce," as required under the FLSA.  Having reviewed the issue de novo, the Court agrees with Magistrate Judge Hegarty that Plaintiff's Complaint is sufficient under Rule 12(b)(6).

The FLSA requires payment of minimum wages and overtime for any employee who is "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C.A. §§ 206, 207.  As pertinent here, the FLSA defines "enterprise engaged in commerce" as an enterprise that

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1).

Plaintiff has sufficiently alleged that the Defendants qualify as an enterprise engaged in commerce—that is, that they have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."[11]  Plaintiff's Complaint alleges that he "handled food and other supplies that originated outside of Colorado, and he utilized Defendants' credit card machine to process payments."  (Doc. # 63 at ¶ 59.)  For Rule 12(b)(6) purposes, these allegations,

---

[11] Defendants do not dispute that Plaintiff has adequately pleaded the $500,000 annual gross volume of sales requirement.

taken as true, are sufficient.[12] *Perez v. ZL Rest. Corp.*, 81 F. Supp. 3d 1062, 1068

(D.N.M. 2014) (employees were engaged in interstate commerce when handling and

processing credit card transactions and placing orders that traveled in interstate

commerce with restaurant suppliers); *see also* 29 C.F.R. § 779.240(a) (The term

"goods" includes "all goods which have been moved in or produced for commerce, such

as stock-in-trade, or raw materials that have been moved in or produced for

commerce."); 29 C.F.R. § 779.240(b) (The term "handling" or otherwise "working on

goods" includes "employees who sort, screen, grade, store, pack, label, address,

transport, deliver, print, type, or otherwise handle or work on the goods. The same will

be true of employees who handle or work on "any part of ingredient of the goods.").

---

[12] In reaching this conclusion, the Court is not suggesting, as Defendants caution, that
all local restaurants are engaged in interstate commerce by virtue of the fact that one or
more employees have potentially handled food that at one point may have traveled in
interstate commerce. Indeed, the applicable Code of Federal Regulations provides,

> An enterprise described in . . . [§ 203(s)(1)] . . . will be
> considered to have employees engaged in commerce or in
> the production of goods for commerce, including the
> handling, selling or otherwise working on goods that have
> been moved in or produced for commerce by any person, if
> during the annual period which it uses in calculating its
> annual sales for purposes of the other conditions of these
> sections, it *regularly* and *recurrently* has *at least two or more
> employees engaged in such activities*. On the other hand, it
> is plain that an enterprise that has employees engaged in
> such activities only in isolated or sporadic occasions, will not
> meet this condition.

29 C.F.R. § 779.238.

The Court therefore denies the Defendants' request to dismiss Plaintiff's FLSA claims against them for failure to sufficiently plead that they constitute an "enterprise engaged in commerce," as required under the FLSA.

## C. <u>RECORDKEEPING FAILURES</u>

Under Plaintiff's "First Cause of Action: [FLSA] Violations," his Complaint states:

> **Record-Keeping Failures**
>
> 100. Defendants have failed to make, keep, and preserve accurate records regarding the wages, hours, and other conditions of employment of Plaintiff and other similarly situated employees, in contravention of the FLSA and affiliated Regulations, 29 U.S.C. §§ 211(c), 215(a)(5) and 29 C.F.R. § 516.
>
> 101. For example, Defendants required Plaintiff and others similarly situated to work after they clocked out and over-reported their tips.

In their Motions to Dismiss, Defendants argued that the "FLSA does not create a private cause of action to enforce FLSA recordkeeping [sic] requirements" and, thus, any such claim made by the Plaintiff on those grounds must be dismissed. (Doc. # 80 at 13.) Magistrate Judge Hegarty agreed that the FLSA does not expressly create a private cause of action for recordkeeping violations but recommended against dismissal because "Plaintiff does not seek damages for any alleged record-keeping failures," (Doc. # 114 at 40–41). *See Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15-CV-02324-RBJ, 2016 WL 5791202, at *3 (D. Colo. Sept. 30, 2016) (concluding that the FLSA does not expressly create a private cause of action for recordkeeping violations and granting defendant's motion to dismiss plaintiffs' claim "to the extent it asserts recordkeeping violations").

Defendants object to Magistrate Judge Hegarty's recommendation and urge this Court to grant their request for dismissal. Plaintiff responds that "there is no record-keeping claim to dismiss," and asks this Court to therefore deny Defendants' request. Based on Plaintiff's express concession that he is not pursing a claim based on any alleged recordkeeping violations, the Court denies as moot Defendants' motion to dismiss that claim.[13]

## IV.  CWCA CLAIMS

Defendants also request dismissal of Plaintiff's CWCA claims on grounds that (1) with respect to Tequilas of Thornton, LLC and the Tequileño Corporate Defendants, Plaintiff has not sufficiently demonstrated an employment relationship; and (2) with respect to the Individual Defendants, the CWCA does not impose personal liability on corporate officers or agents. The Court addresses each objection in turn.[14]

### A.  CORPORATE DEFENDANTS

The Court agrees with Defendants that dismissal of Plaintiff's CWCA claims against Tequilas of Thornton, LLC and the Tequileño Corporate Defendants is warranted.

The CWCA, Colo. Rev. Stat. § 8–4–101 *et seq.*, allows an employee "to sue his or her former employer for earned wages and other compensation the employer has refused to pay." *Lester v. Career Bldg. Acad.*, 338 P.3d 1054, 1058 (Colo. App. 2014). *See also* Colo. Rev. Stat. § 8-4-109. The CWCA defines "employer" as "every person,

---

[13] Although there may not be a private right of action for this violation, the Court can envision a scenario in which a recordkeeping failure may become pertinent to the issue of calculation of damages.

[14] Magistrate Judge Hegarty did not address the Defendants' arguments that Plaintiff's CWCA claims against Tequilas of Thornton, LLC and the Tequileño Corporate Defendants should be dismissed because they do not qualify as Plaintiff's "employers" under the CWCA.

firm, partnership, association, corporation, migratory field labor contractor or crew leader, receiver, or other officer of court in Colorado, and any agent or officer thereof, of the above mentioned classes, employing any person in Colorado." Colo. Rev. Stat. § 8-4-101(6).

This Court has not found, nor have the parties cited, any decision in which a Colorado court has applied a joint employment test to a CWCA claim. *See Coldwell v. Ritecorp Envtl. Prop. Sols.*, No. 16-CV-01998-NYW, 2017 WL 1737715, at *10 (D. Colo. May 4, 2017) (finding the same). Some courts in this district, however, have construed the CWCA to encompass joint employment. *Solis v. Circle Grp., LLC*, No. 16-CV-01329-RBJ, 2017 WL 1246487, at *4 (D. Colo. Apr. 5, 2017); *Evans v. Loveland Auto. Investments, Inc.*, No. 13-CV-2415-WJM-KMT, 2015 WL 161295, at *3–4 (D. Colo. Jan. 13, 2015).

In any event, the CWCA, like the FLSA, focuses on the real-world relationship between a worker and an employer, covering situations in which an employee works "for the benefit of an employer" so long as the employer has sufficient control over the employee. *Solis*, 2017 WL 1246487, at *4; *see also Evans*, 2015 WL 161295, at *4 (discussing employer defendants' control over plaintiff employee under the CWCA). In other words, "an employer's control over the employee is a necessary element for satisfying the CWCA definition of employer." *Coldwell*, 2017 WL 1737715, at *10

For the reasons stated in Part III.B.2., the Court concludes that Plaintiff has failed to adequately plead that Tequilas of Thornton, LLC and the Tequileño Corporate Defendants exercised the requisite control over him to be considered his employers for

the purposes of the CWCA.  His CWCA claims against them must, therefore, be dismissed.

**B.  INDIVIDUAL DEFENDANTS**

With respect to the Individual Defendants Garcia and Sanchez, the Court also finds that dismissal of Plaintiff's CWCA claims warranted.

In *Leonard v. McMorris*, 63 P.3d 323, 325–26 (Colo. 2003) (en banc), the Colorado Supreme Court, considering the legislative history of the CWCA and with a view to long-standing principles of corporate law, held that officers and agents of a corporation are not individually or personally liable for payment of earned, but unpaid, wages and other compensation the corporation owes to employees under the CWCA. *Id.* at 333 ("We hold that the definition of "employer" in section 8-4-101(6) in the [CWCA] does not function as a personal liability provision.").  It is undisputed that Defendants Garcia and Sanchez are officers, or at the very least agents, of the Corporate Defendants.  Thus, pursuant to *Leonard*, they cannot be held personally liable under the CWCA.  *See Lester v. Gene Express*, Inc., No. 09-CV-02648-REB, 2010 WL 3941417, at *5 (D. Colo. Sept. 27, 2010) (concluding that *Leonard* "demonstrates conclusively that [the plaintiff's] allegations against the three individual defendants in his first claim for relief do not state a claim on which relief can be granted" and consequently granting the defendants' motion to dismiss).

Plaintiff nonetheless urges the Court to interpret *Leonard* as only precluding the personal liability of *certain* officers and agents—not *all* officers and agents.  Plaintiff contends that, despite their status as officers or agents, Defendants Garcia and

Sanchez should be held accountable as "persons" under the CWCA because, unlike the officers in *Leonard*, they were directly involved in creating and maintaining Plaintiff's employment relationship. (Doc. # 121.)

The Court disagrees with Plaintiff's interpretation of *Leonard*. Notably, Plaintiff cites no case, in Colorado, this federal Circuit, or otherwise, and this Court has found none, interpreting *Leonard* and the CWCA as Plaintiff suggests. And the *Leonard* Court, faced with the question of "whether all of the corporation's officers are individually liable or only the officers who have been high ranking or active decision-makers," declined to so differentiate. The *Leonard* Court even disagreed with a decision from the Colorado Court of Appeals, wherein the division suggested that liability of an agent depends on the agent's "authority and responsibility" in the company. 63 P.3d at 333 (declining to follow *Major v. Chons Bros.*, 53 P.3d 781 (Colo. App. 2002)).

The *Leonard* Court nonetheless highlighted one instance in which a corporation's officer might be deemed personally liable: "when [pursuant to general corporate law principles] he or she created the [employment] relationship without disclosing the responsible principal corporation to which he [or she] answered as agent." *Id.* at 330. Plaintiff, however, makes no allegations that either Defendant Garcia or Defendant Sanchez failed to disclose his connection to the Corporate Defendants.

The Court also rejects Plaintiff's argument that New York's interpretation of its analogous wage law statute supports holding corporate officers and agents liable under the CWCA. In essence, Plaintiff is requesting that this Court ignore the Colorado Supreme Court's interpretation of the CWCA and adopt another state's interpretation of

that its wage law statute. The Court rejects Plaintiff's request to do so. *Leonard* controls this case.

Finally, the Court denies Plaintiff's request to pierce the Corporate Defendants' veils. To determine whether it is appropriate to pierce the corporate veil, courts undertake a three-part inquiry, which includes a determination of whether (1) the corporate entity is the "alter ego" of the person at issue; (2) the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim"; and (3) an equitable result will be achieved by disregarding the corporate form and holding an individual personally liable. *In re Phillips*, 139 P.3d 639, 643–44 (Colo. 2006); *Micciche v. Billings*, 727 P.2d 367, 372–73 (Colo. 1986). All three prongs of the analysis must be satisfied, and the party seeking to pierce the corporate veil bears the burden of demonstrating, by a preponderance of the evidence, that the veil should be pierced. *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 74 (Colo. App. 2009). Only extraordinary circumstances justify disregarding the corporate entity to impose personal liability. *Leonard*, 63 P.3d at 330.

Plaintiff presents no facts to support a claim for piercing the corporate veil and allowing his CWCA claims against Defendants Garcia and Sanchez to proceed. Indeed, he presents no information related to any of the three parts of the veil-piercing inquiry but instead merely contends that, later in this litigation, he *may* "be able to set forth the evidence satisfying these standards." (Doc. # 121 at 8.) That Plaintiff may present this information later is insufficient to defeat dismissal under Rule 12(b)(6); it merely serves to support that an opportunity to amend the complaint may not be futile

and that dismissal without prejudice is warranted.  *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."); *Lopez v. Next Generation Constr. & Envtl., LLC*, No. 16-CV-00076-CMA-KLM, 2016 WL 6600243, at *2–3 (D. Colo. Nov. 8, 2016) (same).

Accordingly, pursuant to *Leonard*, the Court dismisses without prejudice Plaintiff's CWCA claims against Defendants Garcia and Sanchez in their individual capacity.

## V.    <u>CONCLUSION</u>

Accordingly, the Court ORDERS as follows:

(1) The Recommendation of United States Magistrate Judge Michael E. Hegarty (Doc. # 114) is ADOPTED IN PART and REJECTED IN PART.

(2) The Tequila Defendants' Motion to Dismiss (Doc. # 80) is GRANTED IN PART and DENIED IN PART.  It is GRANTED to the extent that it requests dismissal of Plaintiff's FLSA and CWCA claims against Tequilas of Thornton, LLC.  Those claims are hereby DISMISSED WITHOUT PREJUDICE.  The Motion is also GRANTED to the extent that it requests dismissal of Plaintiff's CWCA claims against Defendant Garcia.  Those claims are also DISMISSED WITHOUT PREJUDICE.  The Motion is DENIED to the extent it requests dismissal of Plaintiff's FLSA claims against Defendant Garcia and his FLSA

and CWCA claims against Defendants Compadres, Inc. and Tequilas Thornton Number 6, LLC.

(3) The Tequileño Defendants' Motion to Dismiss (Doc. # 81) is also GRANTED IN PART and DENIED IN PART.  It is GRANTED to the extent that it seeks dismissal of Plaintiff's FLSA and CWCA claims against El Agave Azul, Inc; El Nopal, Inc.; and El Tequileño #1.  Those claims are DISMISSED WITHOUT PREJUDICE.  The motion is also GRANTED to the extent it seeks dismissal of Plaintiff's CWCA claims against Defendant Sanchez in his individual capacity.  Those claims are DISMISSED WITHOUT PREJUDICE.  The motion is, however, DENIED to the extent it seeks dismissal of Plaintiff's FLSA claims against Defendant Sanchez.

(4) Defendants' request for dismissal of Plaintiff's FLSA claims based alleged recordkeeping violations is DENIED AS MOOT.

DATED: March 23, 2018                    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge